Robert Steven **PHILLIPS** and Henry Daniel **Farr, Appellants,**

v.

**The STATE of Texas.**

**Nos. PD–499–04, 500–04, 501–04, PD–1575–04, 1576–04.**

Court of Criminal Appeals of Texas.

June 7, 2006.

---

**2.** Amendment to (d)(2) effective September 1, 2005 (HB 1759, § 1).

Belinda Johnson Chagnard, Houston, for Appellant Robert Steven Phillips.

Joseph Salhab, Houston for Appellant Henry Daniel Farr.

Kelly Ann Smith, Asst. D.A., Houston, for State.

## *OPINION*

PRICE, J., delivered the opinion of the Court, in which MEYERS, JOHNSON, HOLCOMB and COCHRAN, JJ., joined.

Phillips was convicted of three counts of sexual assault. In a separate and unrelated case, Farr was convicted of two counts of sexual assault. In both cases, the State introduced multiple occurrences of each type of assault, and the trial court refused to require the State to elect, at the close of the State's evidence, which occurrence it would use to convict. Phillips and Farr appealed their sexual assault convictions. The court of appeals found error in both cases, finding harm of a constitutional nature in two of Phillips' convictions and both of Farr's convictions. The court of appeals reversed those convictions. We granted review of both cases on the State's petitions for discretionary review.

We consolidated Appellants' cases, as the same issues are raised in each of their appeals, and both cases come from the Fourteenth Court of Appeals.

## I. Facts and Procedural History

### A. Phillips

Phillips was charged in separate indictments and convicted of three counts of sexual assault of a fifteen-year-old girl.[1] The record shows that Phillips initially hired the victim to teach him English and to help with his business. While they worked together, however, Phillips began to sexually assault the complainant. Incidents of sexual assault occurred repeatedly and escalated for months until the complainant finally told her mother. In separate indictments, the State alleged three offenses: penetration of the victim's mouth by the appellant's sexual organ, oral contact of the victim's sexual organ with the appellant's mouth, and digital penetration of the victim's sexual organ.

At trial, the State offered evidence concerning the charged offenses. As to the first offense, penetration of the victim's mouth, testimony was offered in detail about only one occurrence. A specific date was identified for that occurrence. The complainant also testified that penetration of the mouth occurred intermittently between Summer 2000 and Spring 2001, but was not specific as "to how, when, or

1. The pertinent parts of the three indictments read:

Indictment No. 0881466:
The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County Texas, ROBERT STEVEN PHILLIPS ... heretofore on or about FEBRUARY 15, 2000, did then and there unlawfully, intentionally and knowingly cause the penetration of the mouth of [the Complainant], a person younger than seventeen years of age and not his spouse, with the sexual organ of the Defendant.
Indictment No. 0881467:
The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County Texas, ROBERT STEVEN PHILLIPS ... heretofore on or about MARCH 15, 2001, did then and there unlawfully, intentionally and knowingly cause the sexual organ of [the Complainant], a person younger than seventeen years of age and not his spouse, to CONTACT the MOUTH of ROBERT STEVEN PHILIPS.
Indictment No. 0881468:
The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County Texas, ROBERT STEVEN PHILLIPS ... heretofore on or about JANUARY 15, 2000, did then and there unlawfully, intentionally and knowingly cause the penetration of the FEMALE SEXUAL ORGAN of [the Complainant], a person younger than seventeen years of age and not his spouse by placing HIS FINGER in the FEMALE SEXUAL ORGAN of the Complainant.

where."[2] The testimony concerning the other two offenses, digital penetration and oral contact, was more specific, indicating that the offenses occurred on numerous occasions. The evidence was clear about the first date digital penetration and oral contact occurred and specifically indicated that the offenses occurred at Phillips's apartment. The testimony also showed, however, that digital penetration and oral contact occurred repeatedly over the next few months at Phillips's apartment. No specific dates were given for these later occurrences, although some were identified by month. Finally, testimony showed that digital penetration and oral contact also occurred at a motel on a specific day, and a receipt was introduced from the motel that bore Phillips's signature.

After the State rested, Phillips asked the trial court to require the State to elect the occurrence upon which it intended to rely for a conviction in each alleged offense. The trial court refused the request. Phillips was convicted of all three offenses. He appealed to the Fourteenth Court of Appeals, claiming that the trial court should have required the State to elect the transaction upon which it intended to rely

for its conviction under this Court's holding in *O'Neal v. State*.[3]

The court of appeals held that the trial court erred in failing to have the State elect the offenses it would use to convict on each count.[4] As to the first offense, the court of appeals held that it was error for the trial court not to require the State to elect the transaction upon which it would rely for conviction. But because there was specific testimony as to only one occurrence and only general, nonspecific testimony of other occurrences, the error was harmless.[5] For the remaining two offenses, however, the court of appeals held that the trial court's error in failing to require the state to elect which transaction it would rely upon for conviction was harmful constitutional error because the complainant had given more than one detailed account for each type of offense.[6]

### B. Farr

Farr was charged in two indictments with aggravated sexual assault of a child.[7] The first indictment alleged aggravated sexual assault by oral contact.[8] The second indictment alleged aggravated sexual assault by both digital penetration and oral penetration.[9] During the charge confer-

2. *Phillips v. State,* 130 S.W.3d 343, 354 (Tex. App.-Houston [14th Dist.] 2004).

3. 746 S.W.2d 769 (Tex.Crim.App.1988).

4. *Phillips,* 130 S.W.3d at 349.

5. *Id.,* at 354–55.

6. *Id.,* at 353–54.

7. Farr was also charged in a third indictment with indecency with a child relating to Farr's contact with one of the complainant's younger sisters. Farr was convicted of this offense in the same jury trial, but did not appeal this conviction.

8. The pertinent parts of this indictment read:

Indictment No. 941488:
The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County Texas, HENRY DANIEL FARR ... heretofore on or about JANUARY 15, 2002, did then and there unlawfully, intentionally and knowingly cause the sexual organ of [the complainant], a person younger than fourteen years of age and not the spouse of [Farr], to CONTACT the MOUTH of HENRY DANIEL FARR.

9. The pertinent parts of this indictment read:

Indictment No. 918716:
The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County Texas, HENRY DANIEL FARR

ence, the State abandoned the paragraph in the second indictment alleging oral penetration and proceeded only on the allegation of digital penetration as to that indictment. During testimony, the complainant claimed that Farr, her stepfather, orally contacted her sexual organ four times, giving specific details, indicating her age and grade in school at the time of each act, as well as where the events took place. The complainant also claimed that Farr digitally penetrated her "every chance he got," although she did not provide specific details or dates for these incidents. She could not recall how many times these incidents occurred, but did state that they did not occur in connection with the incidents of oral sex. At the close of all evidence at the guilt phase, the appellant requested the trial court to require the State to make an election of which incidents of oral contact and digital penetration it would rely upon to prove the aggravated sexual assault charges. The trial court denied the request. Farr requested election again during the punishment phase, but the trial court once again denied the request and Farr appealed.

Relying on its earlier opinion in *Phillips*,[10] the court of appeals held that the trial court erred in failing to require the State to elect the offenses it would use to convict on each count.[11] As to the offense of sexual assault by oral contact, the court

of appeals held that the error in failing to require the state to elect which transaction it would rely upon for conviction was harmful constitutional error because the complainant had given more than one detailed account for each type of offense.[12] For the charge of sexual assault by digital penetration, however, the court of appeals held that the error was harmless, because the complainant testified only generally about the repetitive nature of the incidents, without specifically identifying the details of each occurrence.[13]

### C. State's Petition

We granted the State's petitions for discretionary review and consolidated the two cases, due to the similarity in issues, to: 1) reexamine our holding in *O'Neal v. State* to determine when the State is required to elect which transaction it will rely upon for its conviction, and whether overruling an election request constitutes automatic error, despite the lack of erroneous evidentiary rulings and jury instructions, and 2) to determine whether the court of appeals erred in analyzing the trial courts' failure to require the State to elect under a constitutional harm analysis.[14]

### II. Law and Analysis

### A. Reexamining *O'Neal*

■ The State has asked us to review the continuing vitality of *O'Neal* to deter-

---

... heretofore on or about MAY 15, 2002, did then and there unlawfully, intentionally and knowingly cause the penetration of the FEMALE SEXUAL ORGAN of [the complainant], a person younger than fourteen years of age and not the spouse of the Defendant, by placing HIS FINGER in the FEMALE SEXUAL ORGAN of the Complainant.

It is further presented that in Harris County, Texas, HENRY DANIEL FARR ... heretofore on or about MAY 15, 2002, did then and there unlawfully intentionally and knowingly cause the penetration of the FEMALE SEXUAL ORGAN of [the Complain-

ant], a person younger than fourteen years of age and not the spouse of the Defendant, by placing HIS TONGUE in the FEMALE SEXUAL ORGAN of the Complainant.

**10.** *Phillips,* 130 S.W.3d 343.

**11.** *Farr v. State,* 140 S.W.3d 895, 899–900 (Tex.App.-Houston [14th Dist.] 2004).

**12.** *Id.,* at 900–01.

**13.** *Id.,* at 901.

**14.** Tex.R.App. Proc. 44.2(a).

mine when the State is required to elect which transaction it will rely upon for conviction, and we have taken this opportunity to do so. In *O'Neal,* the appellant was accused of sexually assaulting his fifteen-year-old stepdaughter since the age of five.[15] The complainant gave a detailed account of an act of intercourse that occurred on April 24, 1984. The testimony of O'Neal's biological daughter, who shared a bed with the complainant, corroborated the occurrence on that date, but also set out numerous other acts of intercourse that she observed between the complainant and O'Neal over the three or four years preceding trial.[16] O'Neal requested on three separate occasions that the State be required to elect which act of intercourse it would rely upon for conviction—at a pretrial hearing, after the State rested its case, and finally at the close of all the evidence.[17] O'Neal's motion was granted at the close of all the evidence, and the State elected to proceed on the occurrence of April 24, 1984. The election was set out in the jury charge along with a limiting instruction concerning the jury's consideration of the extraneous acts of intercourse.[18] O'Neal was subsequently convicted. On appeal, the court of appeals held that the State was required to elect which act of intercourse it would rely upon for conviction at the close of the State's evidence, rather than at the close of all the evidence, and that the State's later election prejudiced the appellant, thus requiring reversal.[19] The State petitioned and we granted discretionary review.

In reviewing the court of appeals, we held that before the State rests, the trial court has discretion in directing the State to make an election.[20] However, we also held that once the State rests its case in chief, on the timely request of a defendant "the trial court must ... order the State to make its election."[21] In evaluating the Eleventh Court of Appeals's holding that the election was required to be made by the State at the close of its evidence, we held that while the trial court had erred, the error was harmless because, by the close of the State's case, it was clear that the act upon which the State would rely for conviction occurred on April 24, 1984.[22] In other words, the evidence presented at trial clearly gave *de facto* notice to the appellant as to which act of intercourse the State would rely upon for conviction.[23] Thus, the delay in the election did not "embarrass the accused by leaving him in doubt as against which offense he [would] be called upon to defend."[24]

In reexamining *O'Neal,* we find no reason to deviate from our holding that a trial court errs by failing to have the State elect at the close of its evidence when properly requested by the defense. In its initial review of Phillips's appeal, the Fourteenth Court of Appeals aptly set forward the reasons to have the State elect at this juncture:[25]

---

15.  746 S.W.2d at 770.

16.  *Ibid.*

17.  *Id.,* at 771.

18.  *Ibid.*

19.  *O'Neal,* 746 S.W.2d at 770.

20.  *Ibid.*

21.  *Id.,* at 772.

22.  *Ibid.*

23.  *Ibid.*

24.  *Ibid.* (citing *Crosslin v. State,* 90 Tex.Crim. 467, 235 S.W. 905, 906 (1921)).

25.  *Phillips,* 130 S.W.3d at 349.

- to protect the accused from the introduction of extraneous offenses;[26]

- to minimize the risk that the jury might choose to convict, not because one or more crimes were proved beyond a reasonable doubt, but because all of them together convinced the jury the defendant was guilty;[27]

- to ensure unanimous verdicts; that is, all of the jurors agreeing that one specific incident, which constituted the offense charged in the indictment, occurred;[28]

- and to give the defendant notice of the particular offense the State intends to rely upon for prosecution and afford the defendant an opportunity to defend.[29]

In short, requiring the State to elect at the close of its evidence forces it to formally differentiate the specific evidence upon which it will rely as proof of the charged offense from evidence of other offenses or misconduct it offers only in an evidentiary capacity. This allows the trial judge to distinguish the evidence which the State is relying on to prove the particular act charged in the indictment from the evidence that the State has introduced for other relevant purposes.[30] Thus, the trial court can instruct the jury on the proper use and weight to accord each type of evidence. Moreover, the election requirement protects fundamental rights such as notice and unanimity, insuring both that the defendant is aware of precisely which act he must defend himself against, and that the jurors know precisely which act they must *all* agree he is guilty of in order to convict him. Because of the multitude of compelling, systemic reasons for requiring an election, we decline to alter our decision in *O'Neal*, and find its reasoning applicable to the facts before us today.

### B. Error Analysis

#### i. The State's Arguments Against Error

The State relies on two cases, *Steele v. State* and *McNutt v. State*,[31] for the contention that the State was not required to elect because the facts adduced showed only one continuous course of conduct or transaction. This court has previously held, however, that *Steele* applies only where the evidence shows that several acts of intercourse were committed by one continuous act of force and threats that are "part and parcel of the same criminal transaction."[32] In *Steele*, unlike in the cases presently before us, two acts of intercourse occurred approximately two hours and twenty miles apart.[33] The logic

---

26. See *Fisher v. State,* 33 Tex. 792, 794 (1870).

27. See *id.* ("The jury may have taken both [offenses] into account, and have considered that one or the other was not sufficiently made out to warrant a conviction, but that both together convinced [it] of the guilt of the defendant. . . .").

28. See *Francis v. State,* 36 S.W.3d 121, 123–25 (Tex.Crim.App.2000).

29. See *O'Neal,* 746 S.W.2d at 772–73.

30. See Tex.Code Crim. Proc. art. 38.37.

31. 523 S.W.2d 685 (Tex.Crim.App.1975); 168 Tex.Crim. 27, 322 S.W.2d 622 (1959).

32. *Crawford v. State,* 696 S.W.2d 903, 906 (Tex.Crim.App.1985).

33. *Steele,* 523 S.W.2d at 686. See also *Bethune v. State,* 363 S.W.2d 462, 464 (Tex. Crim.App.1962) (where victim was raped repeatedly in one night, this Court found that the acts of intercourse occurred in the same bed in the same night, and held that, in such a case, no election required). See also *Ledesma v. State,* 181 S.W.2d 705, 707 (Tex.Crim. App.1944) (where several acts of sexual intercourse were accomplished by one continuous act of force and threats in one day, no election required).

of *Steele* is hardly applicable to the facts before us, in which the complainants were molested at different locations over a period of months or years.

Additionally, the State's other precedent, *McNutt*, merely deals with the admissibility of extraneous offenses as evidence, not the election by the State as to which act of intercourse was being relied upon for conviction.[34] In *McNutt*, complainant was allowed to testify about her conversation with the appellant on the night she left home concerning their plans for her to engage in prostitution with the appellant acting as her procurer, about his suggesting an act of sodomy to her, about an act of intercourse for hire she had with another man on the same night, giving the money to the appellant, and about her having had other prostitution dates while she was with the appellant.[35] The issue in *McNutt* was the admissibility of these extraneous offenses, not the requirement for an election. Indeed, the State was never even asked to elect.[36] Accordingly, the State's arguments based on *Steele* and *McNutt* are unpersuasive in our analysis of the cases before us, where the acts are clearly separate and distinct.

The State also posits that Article 38.37 of the Code of Criminal Procedure allows the admission of evidence of other crimes, wrongs, or acts for its bearing on relevant matters such as the state of mind of the defendant and the child, and the previous subsequent relationship between the de-

fendant and the child. Had the appellants requested, the State urges, they would have been entitled to a contemporaneous limiting instruction at the time the extraneous offense testimony came into evidence.[37] Because they could have obtained limiting instructions at the time of admission of the evidence, the State claims, the appellants' requests for election were untimely. This argument, however, is also unavailing.

■ Article 38.37 does allow for the admission of other crimes, wrongs or acts to be admitted when relevant. However, it does not restrict a defendant's right to have the State elect the incident for which it will seek a conviction by forcing the defendant to request a limiting instruction when the evidence is admitted. The requirement of an election upon timely request is well-settled[38] and distinct from a limiting instruction. The purpose of a limiting instruction is to "restrict evidence to its proper scope and instruct the jury accordingly."[39] An election partly serves this purpose; but it serves other salutary purposes as well, providing explicit notice to the defendant, and promoting unanimous jury verdicts. A limiting instruction alone does not adequately serve all these purposes. Nor does a defendant somehow waive or forfeit his right to an election, with all of its attendant advantages, by his failure to request a limiting instruction at the absolute earliest opportunity.[40]

---

34. *Crawford v. State*, 696 S.W.2d 903, 905 (Tex.Crim.App.1985)

35. 322 S.W.2d at 623–24.

36. *Id.*, at 624.

37. Tex.Code Crim. Proc. art. 38.37; *Rankin v. State*, 974 S.W.2d 707 (Tex.Crim.App.1996).

38. *O'Neal*, 746 S.W.2d 769; *Crawford v. State*, 696 S.W.2d 903 (Tex.Crim.App.1985); *Bates*

*v. State*, 165 Tex.Crim. 140, 305 S.W.2d 366 (1957); *Hudgins v. State*, 69 S.W.2d 97 (1921); *Crosslin v. State*, 235 S.W. 905 (Tex. Crim.App.1921).

39. Tex.R.Evid. 105(a).

40. It is of course conceivable that a limiting instruction, requested and given at the time the extraneous misconduct evidence was admitted, could essentially render the *lack* of an election later on harmless error. This does

█ Similarly, the State argues that a valid jury charge serves as a *de facto* election. A jury charge alone, however, does not afford the defendant with the requisite notice that is provided by a valid and timely election by the State. A jury charge cannot be a *de facto* election, because the instruction is not given until the end of trial. This would not require the State to elect after its case in chief, when the defense needs to know the evidence it must refute in order to challenge the specific act in the indictment. The defendant must be made aware of the exact crime he is defending against to ensure notice at the end of the State's evidence, if the defendant so requests. A jury charge and an election are not interchangeable in this context. The State is required to elect at the close of its evidence when properly requested.

### ii. Application of *O'Neal*

We therefore agree with the court of appeals that the trial court erred in both cases in failing to require the State to elect. The rule set forth in *O'Neal* applies to the facts of these cases. The State has the privilege, in a case such as this, to delay election until such stage in the development of the evidence as would give the State an opportunity to intelligently determine upon which transaction it prefers to rely for a conviction.[41] But, for the reasons set forth by the court of appeals and listed above, once the State rests its case in chief, on the timely request of a defendant the trial court must order the State to make its election, regardless of the lack of erroneous evidentiary rulings and jury instructions. It is at this juncture that the defense needs notice so that it can put forward a vigorous defense and argue to the jury the evidence that challenges some or all of the elements of the State's case. Additionally, an election allows a defendant to tailor a request for a limiting instruction and the trial judge to craft that instruction on the basis of the State's theory of proving its case.

█ As the court of appeals points out, Farr did not request election at the close of the State's case.[42] Farr did not move for election until the close of all evidence. The question, then, is whether his request for election was timely, as required by the rule of *O'Neal*.[43] Undoubtedly, if Farr had petitioned for election at the close of the State's evidence, the trial court would have been obligated to require the State to elect at that time. Because Farr did not move for election until the close of all evidence, Farr was not entitled to an election at the close of the State's evidence. However, Farr was still entitled to an unanimous verdict. He preserved his right to an unanimous verdict by calling for an election at the close of the all evidence. Therefore, Farr's request was timely insofar as he was entitled to a unanimous jury verdict, and the trial court had an obligation to require the State to elect at that juncture.

---

not mean, of course, that the defendant would not be entitled to his requested election. That is, if he requested an election, the trial court would clearly err not to give it. But if a limiting instruction had been provided at the time the evidence was admitted that sufficiently made clear the act upon which the State was relying for conviction, the trial court's error might be harmless for the same reasons we stated in *O'Neal*, supra, at 772,

*viz:* by the close of the State's case, the act upon which the State was relying for conviction would be unmistakable. *See O'Neal*, supra, at 772.

**41.** *O'Neal*, 746 S.W.2d at 771.

**42.** *Farr*, 140 S.W.3d at 898, n. 3.

**43.** *O'Neal*, 746 S.W.2d at 772.

Accordingly, we affirm the judgment of court of appeals as to both appellants, that the trial court erred in failing to require the State to elect the incidents upon which it would convict. We turn now to evaluate whether the court of appeals applied the correct standard to evaluate harm in these cases.

### C. Proper Harm Analysis

■■■ The State claims that the court of appeals erred in conducting a constitutional harm analysis. Such an analysis requires a reviewing court to reverse unless it finds beyond a reasonable doubt that the error did not contribute to the conviction or had but slight effect.[44] Although we have not directly decided the proper harm analysis for failure to elect, the reasons for requiring an election, and our precedents, offer guidance.

For example, we examined the unanimous jury requirement in *Francis v. State,* in which the jury charge stated that the appellant engaged "in sexual contact by touching the breast *or* genitals of" the victim.[45] The State introduced evidence of four separate incidents. In two different incidents, the appellant touched the victim's breasts. On two separate occasions, the appellant touched the victim's genitals. There was never a single incident alleged in which the appellant touched both the breasts and the genitals of the victim.[46] In that case, we held that, by charging the two offenses in the disjunctive by using the term "or," it is possible that six members of the jury convicted appellant on the breast-touching offense (while the other six believed he was innocent of the breast-touching) and six members convicted appellant on the genital-touching offense (while the other six believed he was innocent of the genital-touching). We held that this violated Francis's right to an unanimous jury verdict [47] In his separate opinion joining the Court's opinion, Judge Womack identified this right as one of state constitutional dimension.[48]

■■■ A similar danger arises when a multitude of incidents are presented to the jury and the State is not required to elect. Six jurors could convict on the basis of one incident and six could convict on another (or others). While each of the incidents presented may constitute the commission of a sexual abuse offense, the jury must agree on one distinct incident in order to render a unanimous verdict.[49] Consideration of these incidents without an election jeopardizes the defendant's right to a unanimous jury verdict as guaranteed by the Texas Constitution, even though the extraneous incidents may be admissible for other purposes under Article 38.37 of the Code of Criminal Procedure.[50] When the Texas Constitution is violated, as it was in the case before us, the proper analysis is provided by Rule of Appellate Procedure 44.2(a).

In addition to protecting the unanimity of the jury verdict, an election is also required in order to provide adequate notice and an opportunity to defend. The deprivation of notice also implicates of fundamental constitutional principles, *viz:* due process and due course of law. As the Supreme Court has said, "No principle of procedural due process is more clearly es-

---

44. TEX.R.APP. P. 44.2(a).

45. 36 S.W.3d at 122 (emphasis added).

46. *Id.,* at 124.

47. *Id.,* at 125.

48. *Id.,* at 126, n. 6; TEX. CONST. art. V, § 13.

49. *See Ngo v. State,* 175 S.W.3d 738, 745 (Tex.Crim.App.2005)

50. *Id.*

tablished than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." [51]

Accordingly, we find that the failure to require the State to elect upon timely request results in constitutional error, and that the court of appeals was indeed required to reverse the convictions unless it found beyond a reasonable doubt that the error did not contribute to the convictions or had but slight effect.[52] Accordingly, the court of appeals applied the correct standard in conducting its harm analyses to the error found in the cases of Phillips and Farr.

### III.  Conclusion

We affirm the judgments of the court of appeals in both cases.[53]

KELLER, P.J., filed a concurring opinion, in which KEASLER and HERVEY, JJ., joined.

WOMACK, J., concurred.

KELLER, P.J., filed a concurring opinion in which KEASLER, and HERVEY, JJ., joined.

Although I agree with the result reached by the Court, I disagree with some of its comments regarding how the reasons for an election relate to the timing of an election.  The Court sets forth four reasons for the election rule and says that these reasons support requiring an election (upon timely request) at the end of the State's case-in-chief.[1]  But while all four reasons support requiring an election *at some point*, only the fourth reason—notice to the defendant—supports requiring an election at the time the State rests.

The first reason—protecting the accused from the introduction of extraneous offenses—suggests that election should be made when the State offers the extraneous-offense evidence in question.  But this point in time cannot be formulated as a general rule because (1) often the accused is not entitled to protection from the introduction of extraneous offenses,[2] and (2) as the Court points out, the State will often need to develop its entire case-in-chief be-

---

**51.**  *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948).

**52.**  Tex.R.App. P. 44.2(a).

**53.**  We are not unmindful of the points and concerns that Presiding Judge Keller has expressed in her thoughtful concurring opinion. We do not in this opinion intend to fashion an inflexible "monolithic rule."  But it does bear emphasis that the close of the State's case in chief is the point in time at which an election best serves *all* of the interests involved.  This is not to say that a later request for an election might not also be timely, insofar as it addresses the concern for jury unanimity, as our analysis of Farr's case illustrates.  *See* 912–13, *ante*.  On the other hand, as Judge Keller points out, there will be no jury unanimity issue at all in a bench trial.  Even in a bench trial, however, an election may be important at the close of the State's case, not

simply to comply with the defendant's need for notice of the particular incident against which he must defend, but also to insure that the trial judge will assay the evidence with a view to whether the defendant committed a discrete offense, and not potentially convict him for being a criminal in general.  Still, as Judge Keller points out, such a requirement, at least insofar as it fails to implicate state and/or federal constitutional guarantees of jury unanimity, may well be subject to an ordinary harm analysis, under Rule 44.2(b) of the Rules of Appellate Procedure, rather than Rule 44.2(a), which we apply on the facts before us in these cases today.

**1.**  Court's op. at 909–10 ("the Fourteenth Court of Appeals aptly set forward the reasons to have the State elect at this juncture").

**2.**  *See e.g.* Tex.Code Crim. Proc. 38.37;  Tex.R. Evid. 404(b)

fore it can intelligently determine which transaction it prefers to rely upon for conviction, and therefore which offenses are "extraneous." [3] I believe that is why *O'Neal* held that *before* the State rests, it is within the trial court's discretion whether to order an election.[4] It may be possible for a trial court to abuse its discretion in deciding whether to order an election before the State rests, but the trial court's determination would have to be made on a case-by-case basis rather than at a particular point in trial. Incidentally, preserving error on such a claim would require objecting at the time the evidence was offered, and because protections against the introduction of extraneous offenses are found solely in statutes and court rules, any failure to order an election at such an early stage would be non-constitutional error, to be analyzed under Texas Rule of Appellate Procedure 44.2(b).

The second and third reasons—ensuring proof beyond a reasonable doubt and jury unanimity—support requiring an election before submission of the case to the fact finder (e.g. before the jury is charged), but not any earlier. And the jury unanimity concern would apply only when there is a jury. It follows that an election request at the close of all the evidence is timely if proof beyond a reasonable doubt and jury unanimity are the concerns underlying the request. If the issue is notice, however, then a request at the close of the evidence is too late, because the time to make use of that notice would be during the defense's case.

The Court also says that requiring an election at the end of the State's case-in-chief is necessary to enable the trial judge to craft an appropriate limiting instruction. But limiting instructions are specifically authorized at only two points in trial: (1) at the time the evidence is admitted,[5] and (2) in the jury charge.[6] An election at the end of the State's case-in-chief would occur too late for the former but sooner than necessary for the latter.

In some portions of its opinion, the Court seems to assume that the "election requirement" is a monolithic rule. In actuality, various considerations are implicated by evidence of multiple offenses conforming to the indictment. Rather than require trial courts to engage in exhaustive case-by-case determinations regarding when these considerations arise and what to do about them, we have imposed a requirement that the State elect on which offense it will proceed, and that it do so upon request at a period that will serve the implicated interests—at the end of the State's case-in-chief, or if requested later, before submission to the jury (with a case-by-case approach used for requests occurring before the State rests). Even when an appellate court has determined that a trial court erred in denying a request to require the State to elect, matters such as when the request is made, whether the trial is to a jury, and which interests are implicated can impact error preservation and/or a harm analysis.

With these comments, I concur in the Court's judgment.

---

3. Court's op. at 912.

4. *See* Court's op. at 909 (citing *O'Neal v. State,* 746 S.W.2d 769, 770 (Tex.Crim.App. 1988)).

5. *See* Tex.R. Evid. 105(a).

6. *See Moses v. State,* 105 S.W.3d 622, 625 (Tex.Crim.App.2003)(proper limiting instruction given at time of testimony and in the jury charge).