TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00565-CR






Thomas Leo Wilford, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT


NO. D-1-DC-06-200059, HONORABLE FRED A. MOORE, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



A jury found appellant Thomas Leo Wilford guilty of aggravated assault with a deadly
weapon and assessed punishment, enhanced by a previous felony conviction, at twenty years'
imprisonment. In a single point of error, appellant contends that the trial court's jury charge denied
him his right to a unanimous jury verdict. We agree that the charge was erroneous, but we find
that the error was not reversibly harmful under the circumstances. Therefore, we affirm the
judgment of conviction.


BACKGROUND


Appellant spent the evening of January 3, 2006, with the complainant Tracy Lucas,
a woman he had been dating for about a year. After dinner, they rented some movies and returned
to Lucas's apartment. Lucas testified that she was tired and went to bed, leaving appellant to watch
the movies. Between midnight and 1:30 a.m., appellant awakened Lucas three times and asked her
to drive him somewhere. On the first two occasions, Lucas refused and went back to sleep. On the
third occasion, Lucas agreed to give appellant a ride, got out of bed, and began to get dressed. As
she was dressing herself, Lucas noticed that appellant was reaching under the bed. She walked over
to him and asked what he was doing. He told her that he was not doing anything and told her to step
away. Instead, Lucas sat down on the bed next to appellant.

At this point, appellant again reached under the bed and withdrew an eight-inch knife
with a serrated blade. Appellant told Lucas that he had gotten the knife from his cousin. Lucas,
however, told appellant that she recognized the knife as one of hers. Then, without saying a word,
appellant lunged at Lucas and, in her words, "tried to cut my throat." In fact, appellant inflicted only
a minor cut at the base of Lucas's neck. Appellant then turned and "just got on top" of Lucas. Lucas
asked appellant, "Leo, are you trying to kill me?" Without answering, appellant stabbed Lucas's left
breast. Lucas testified that appellant then raised his hand as if to stab her again, but the blade of the
knife had somehow separated from the handle. Fearing that the knife blade was still in her chest,
Lucas began to scream for her son, who was sleeping in the other bedroom. With this, appellant fled
from the apartment on foot.

Lucas's son, Antonio Lucas, saw appellant run from his mother's room. He called
911 and both he and his mother spoke to the operator. A recording of the call was introduced in
evidence and played for the jury. The first police officer on the scene, Carlos Mayfield, testified that
Lucas was "frantic" and "thought she was going to die." Lucas told the officer that appellant had
stabbed her. Emergency medical technician Casey Snyder testified that he examined Lucas at her
apartment and determined that the stab wound to her breast was potentially life-threatening. Lucas
was transported to a hospital for treatment. The jury also saw several photographs of the blood on
the floor of Lucas's apartment. The knife handle was found outside the apartment, but it appears
that the blade was never found.

On April 1, 2006, while appellant was awaiting trial, Lucas wrote a letter "To Whom
It May Concern" giving a different version of the events of January 3. In the letter, Lucas stated that
she and appellant began to argue while watching a movie. The letter continued:


 To avoid further argument Thomas got up from the bed to leave the bedroom. 
I then jumped up from the bed to prevent him from leaving, I was pulling on his arm
trying to force him back into the room, he said Tracy just let me go, I don't want to
argue with you.


 Once we got to the door he had to remove the small knife to get out. I have
always used the small knife . . . to secure the door. I have a very large body frame
and somehow, doing the struggle my breast made contact with the knife. I had been
drinking a lot and was very upset prior to [the] knife accident . . . therefore I called
the police. I was very incoherent and crazy with anger. At the time I did not want
it to appear as an accident, but, it really was.



This letter was introduced in evidence as a defense exhibit. Lucas testified that the letter was untrue. 
She said that she agreed to write the letter at appellant's urging because, at the time, she still cared
for appellant and did not want him to go to prison.


DISCUSSION


The indictment accused appellant of aggravated assault in three unnumbered
paragraphs. The first paragraph alleged that appellant intentionally and knowingly threatened Lucas
with imminent bodily injury and that he used and exhibited a deadly weapon, the knife, while
doing so. See Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2) (West Supp. 2007). The second
and third paragraphs alleged that appellant intentionally, knowingly, and recklessly caused bodily
injury to Lucas by stabbing (second paragraph) and cutting (third paragraph) her with the knife, and
that the assault was aggravated by the use and exhibition of a deadly weapon, the knife. See id.
§§ 22.01(a)(1), 22.02(a)(2).

After the evidence was closed and just before the jury was charged, appellant asked
that the State be required to elect one of the three paragraphs to submit to the jury. The motion
for election was overruled. In its charge, the court authorized the jury to convict appellant of
aggravated assault if it found that he: (1) intentionally or knowingly threatened Lucas with imminent
bodily injury while using and exhibiting the knife as a deadly weapon, or (2) intentionally,
knowingly, or recklessly caused bodily injury to Lucas by stabbing her with a knife, a deadly
weapon, or (3) intentionally, knowingly, or recklessly caused bodily injury to Lucas by cutting her
with a knife, a deadly weapon. The charge did not require the jurors to agree unanimously as to any
one of the three alternatives.

Appellant contends, and the State concedes, that the jury charge was erroneous. 
Assault by threatening another with bodily injury and assault by causing bodily injury to another are
different statutory offenses for which a defendant may be convicted only by a unanimous finding
of guilt. Marinos v. State, 186 S.W.3d 167, 174-75 (Tex. App.--Austin 2006, pet. ref'd). Although
the State sought only a single conviction for aggravated assault, it was error for the trial court to
authorize that conviction without requiring the jury to unanimously agree that appellant committed
either aggravated assault by threat as alleged in paragraph one or aggravated bodily injury assault
as alleged in paragraphs two and three. Id. at 175. (1)

Having found charge error, we must determine whether the error requires that
appellant be given a new trial. The appropriate standard for making this determination depends
on whether the error was preserved by objection in the trial court. Jimenez v. State, 32 S.W.3d 233,
237-38 (Tex. Crim. App. 2000); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)
(op. on reh'g). If the error was the subject of a timely objection, reversal is required as long as the
error was not harmless. Almanza, 686 S.W.2d at 171. If no proper objection was made, reversal is
required only if the error was so egregious and created such harm as to have denied the defendant
a fair and impartial trial. Id.

Appellant asked that the State be required to elect a single paragraph of the indictment
to submit to the jury, but he did not object to the jury charge on the ground that it violated his right
to a unanimous verdict. One purpose of an election is to ensure a unanimous jury verdict. See
Phillips v. State, 193 S.W.3d 904, 909-10 (Tex. Crim. App. 2006). However, the defendant's right
to an election by the State and the defendant's right to a unanimous jury verdict are separate
and distinct rights. See Ngo v. State, 175 S.W.3d 738, 748 (Tex. Crim. App. 2005) (holding that
failure to request election does not forfeit right to unanimous verdict). The evidence in this
case supported a conviction for both bodily injury assault and assault by threat. The charge error was
not in authorizing the jury to convict appellant for either of these offenses, but in failing to require
that the jury's choice be unanimous. Id. at 749. Because the charge error in this case was not
preserved by a timely and sufficiently specific objection, we must determine whether appellant was
egregiously harmed. Almanza, 686 S.W.2d at 171. We base our harm determination on a review
of the record as a whole, including the entire jury charge, the contested issues and the weight of
the probative evidence, and the arguments of counsel. Id. The harm must be actual and not just
theoretical. Id. at 174.

The only mention of unanimity in the jury charge was in the final paragraph, where
the jury was told that its "verdict must be unanimous." This instruction did not cure the error in the
application paragraph. Ngo, 175 S.W.3d at 745; Marinos, 186 S.W.3d at 175.

Appellant refers us to this statement by the prosecutor during final jury argument:


This morning when we began, I had to read you the indictment, which is
pretty long, and it's actually listed here for you on the different ways that you could
find this individual guilty of committing the aggravated assault. And just briefly, it's
whether or not he threatened her and exhibited the weapon, whether or not he stabbed
her and exhibited the weapon, or whether or not he cut her and exhibited the weapon.


And I believe there's testimony on all of that.



Although this statement did draw the jurors' attention to the State's alternative allegations,
the prosecutor did not explicitly tell the jurors that they could convict appellant of aggravated assault
without agreeing among themselves as to whether appellant was guilty of aggravated assault
by threat or aggravated bodily injury assault. See Ngo, 175 S.W.3d at 742; Marinos, 186 S.W.3d
at 175-76.

Appellant's assertion that he was harmed primarily rests on the two different stories
told by the complainant. He argues that some of the jurors, believing Lucas's trial testimony, could
have found him guilty of intentionally or knowingly threatening her, while other jurors, believing
Lucas's letter, could have found him guilty of recklessly stabbing or cutting her. But Lucas's letter
does not support a finding that appellant consciously disregarded a substantial and unjustifiable risk
that he would cause bodily injury. See Tex. Penal Code Ann. § 6.03(c) (West 2003) (defining
"recklessly"). According to the letter, appellant had simply removed the "small knife" Lucas used
as a door stop and was attempting to leave the room when Lucas stopped him and caused her breast
to accidentally "ma[k]e contact with the knife." For a juror who believed the letter, appellant
committed no crime--or at the very least, he did not use or intend to use the knife as a deadly
weapon--and the proper verdict would have been an acquittal, not a conviction for reckless
aggravated bodily injury assault. (2)

Because the jury convicted appellant, we must assume that the jurors unanimously
believed Lucas's trial testimony. That testimony would support a finding that appellant intentionally
or knowingly caused bodily injury to Lucas, and it would also support a finding that he intentionally
or knowingly threatened Lucas with bodily injury. But, as in Marinos, to find appellant guilty of
either offense, a juror had to find him guilty of both. See 186 S.W.3d at 176-77. The aggravating
element for both offenses was the use or exhibition of the knife as a deadly weapon. The knife was
not a deadly weapon per se. See Tex. Penal Code Ann. § 1.07(a)(17)(A) (West Supp. 2007) (deadly
weapon per se); McCain v. State, 22 S.W.3d 497, 502-03 (Tex. Crim. App. 2000). The only
evidence that the knife was a deadly weapon in the manner of its use or intended use was Lucas's
testimony that appellant lunged at her with the knife, cutting her on the throat, then stabbed her in
the breast, and then raised his arm as if to stab her again. See Tex. Penal Code Ann. § 1.07(a)(17)(B)
(deadly weapon by use or intended use). Thus, by finding that appellant used or exhibited a deadly
weapon, the jurors necessarily found that he intentionally inflicted bodily injury and intentionally
threatened further bodily injury. See Schmidt v. State, 232 S.W.3d 66, 67 (Tex. Crim. App. 2007)
(holding that during prolonged assault, aggressor's actions can include both threats of harm and
actual harm; infliction of harm itself can be threat of further harm); Marinos, 186 S.W.3d at 177
(holding that under circumstances shown, defendant's actions constituted both aggravated bodily
injury assault and aggravated assault by threat).

In summary, the trial court erred by authorizing the jurors to convict appellant of
either aggravated assault by threat or aggravated bodily injury assault without requiring them to
unanimously convict him of one or the other offense. But the error did not deny appellant a fair and
impartial trial because, under the circumstances, the jurors had to find appellant guilty of both
offenses in order to convict him of either offense.

Appellant has also filed a pro se brief. (3) In the interest of justice, we will briefly
address the contentions raised in this brief.

Appellant contends that the evidence is legally and factually insufficient to sustain
the jury's verdict. Appellant's argument in support of this contention is in large part an attack on the
complainant's credibility. The credibility of a witness is, however, a question for the jury to which
appellate courts must defer. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (legal sufficiency);
Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (legal sufficiency); Johnson v. State,
23 S.W.3d 1, 9 (Tex. Crim. App. 2000) (factual sufficiency). Appellant also argues that the State
failed to prove that the knife was a deadly weapon because the knife was not introduced in evidence. 
It was not necessary for the State to introduce the knife into evidence in order to prove that it
was a deadly weapon. Victor v. State, 874 S.W.2d 748, 751 (Tex. App.--Houston [1st Dist.] 1994,
pet. ref'd). The complainant's testimony and the evidence of her injuries were sufficient to prove
that appellant wielded a knife that was a deadly weapon in the manner or its use or intended use. 
Finally, appellant contends that the State failed to prove that Lucas sustained serious bodily injury. 
Such proof was not required; the indictment alleged only that she sustained bodily injury. Compare
Tex. Penal Code Ann. § 1.07(a)(8) (West Supp. 2007) (defining "bodily injury") with id.
§ 1.07(a)(46) (defining "serious bodily injury").

In his remaining pro se points of error, appellant asserts that the State violated the
rules of evidence and improperly attacked defense counsel during jury argument. We have reviewed
these allegations and find them to be without merit.

The judgment of conviction is affirmed.



 ___________________________________________

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed: April 3, 2008

Do Not Publish

1. Unanimity was not required with respect to the two bodily injury assault paragraphs. Those
paragraphs merely alleged two different means of committing aggravated bodily injury assault: by
stabbing with a knife and by cutting with a knife. When alternate manners or means of committing
the same offense are alleged, each may be submitted to the jury disjunctively, the jurors are not
required to agree upon a single manner or means of commission, and it is appropriate for the jury
to return a general verdict for that offense if the evidence supports a conviction under any one theory
of the offense. Marinos v. State, 186 S.W.3d 167, 175 (Tex. App.--Austin 2006, pet. ref'd).
2. The charge did not authorize appellant's conviction for the lesser included offense of
unaggravated assault.
3. The pro se brief was filed in response to counsel's original brief, which concluded that the
appeal was frivolous. See Anders v. California, 386 U.S. 738 (1967). We determined that the brief
did not meet the requirements of Anders and instructed counsel to file a new brief. Counsel's second 
brief raised the nonfrivolous contention discussed above.