COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

REYNALDO CURIEL VILLALOBOS,   §

    Appellant,   §

v.   §

  §

THE STATE OF TEXAS,   §

    Appellee.   §

  §

No. 08-09-00014-CR

Appeal from the

219th District Court

of Collin County, Texas

(TC# 219-81651-07)

## **O P I N I O N**

In a single indictment, Appellant was charged in Counts I and II with aggravated sexual assault of a child and in Count III with indecency with a child. During trial, the State abandoned Count III. A jury convicted Appellant of both counts of aggravated sexual assault of a child and sentenced him to consecutive terms of imprisonment for sixty years and five years, respectively.

In two issues, Appellant asserts that the trial court erred by denying his request that the State elect "which of the incidents . . . submitted into evidence applied to which count," and complains that the trial court abused its discretion in determining the proper outcry witness. We reverse the judgment as to Count II on the election issue and affirm Count I on both issues.[1]

## **BACKGROUND**

At the time of the offenses, C.F., who was born in 1999, along with his siblings, stayed at his Aunt Alicia's home while his mother, Lourdes, one of Alicia's sisters, worked. Appellant also

---

[1] As this case was transferred from our sister court in Dallas, we decide this case in accordance with the precedent of that court. TEX. R. APP. P. 41.3.

resided at Alicia's residence. Alicia was terminally ill and was sometimes cared for by another sister, Laura. During the first week of May 2007, Alicia told Laura, "[H]e [has] to pay, he [has] to go to jail." Laura asked Alicia if she was referring to Appellant, and Alicia "moved her head." Recalling that C.F. had recently begun to urinate in his pants, Laura contacted Lourdes, told her what Alicia had said, and urged Lourdes to speak with her children and find out if anything had happened. At first, Lourdes thought the children may have misbehaved and had been spanked. Lourdes asked C.F. if anyone had ever touched his "privates." C.F. began to cry and told her that Appellant had on one occasion used his sexual organ to penetrate C.F.'s anus and mouth, which resulted in "oatmeal" leaving Appellant's "private." C.F. demonstrated the assaults for his mother.

On May 11, 2007, Alicia was placed in hospice care, and she died eleven days later. The day before Alicia was placed in hospice care, a forensic interview was conducted with C.F. There, C.F. related that Appellant had sexually assaulted him on multiple occasions, that his Aunt Alicia had stopped one of the occurrences, and that she told C.F. to call the police if it happened again. C.F. testified that he then told Aunt Alicia "everything," without specifying what "everything" entailed.

Count I of the indictment alleged that Appellant caused the penetration of C.F.'s anus by means of Appellant's male sexual organ and caused C.F.'s anus to contact Appellant's male sexual organ. Count II of the indictment alleged that Appellant caused the penetration of C.F.'s mouth by means of Appellant's male sexual organ and caused C.F.'s mouth to contact Appellant's male sexual organ.

At trial, C.F. testified that Appellant had used his penis to penetrate C.F.'s anus on one occasion, and had placed his penis in C.F.'s mouth on three occasions. The first oral sexual assault occurred immediately after the anal assault, when "oatmeal" was emitted from Appellant's "private." The second oral sexual assault took place a few days thereafter, when Appellant used a condom and

goat's milk.  The third oral sexual assault happened in the kitchen where Alicia, who had walked in,

had observed and stopped the offense approximately two nights before the forensic interview.

After the State abandoned Count III (indecency with a child) and rested its case-in-chief,

Appellant made the following request to the trial court:

> [T]he one remaining item I have is . . . that [C.F.] has related two different incidents here, and I would like the State to be required to elect at this point which incident is the incident they're going to rely upon.
>
> They have Count One and they have Count Two, which allege two different methods of committing the offense.  And at this point, so that I know how I'm defending, I would like to know are we talking about the incident that was the 2006 incident, or the later incident that was the goat's milk incident, or what –which incident is which?  Does Count One refer to one, Count Two to the other?  They both refer to one?

The State responded:

> Your Honor, I don't believe the State has to elect in this instance because there are only two counts.  Obviously, if there [were] two different counts alleged of the same act, for example, that on one date that the defendant penetrated the anus of [C.F.], and then on another date that the same thing happened, clearly in that instance I would have to elect; but in this instance I don't believe the State is required to.

The trial court denied Appellant's request that the State make an election.  Having been convicted

under both counts, Appellant now appeals.

## ELECTION OF ACTS

In his first issue, Appellant asserts that the trial court erred when it overruled his request that

the State elect the acts upon which it would rely in support of a conviction for each offense.  When

charging multiple offenses in a single indictment, the Code of Criminal Procedure requires that each

separate offense be set out in a separate "count."  TEX. CODE CRIM. PROC. ANN. art. 21.24(a)

(Vernon 2009); *Martinez v. State*, 225 S.W.3d 550, 555 (Tex. Crim. App. 2007).  Within a single

count, different methods of committing the particular offense may be alleged within paragraphs.

TEX. CODE CRIM. PROC. ANN. art. 21.24(b); *Martinez*, 225 S.W.3d at 555.

Once the State has closed its evidence, and upon the timely request by the defendant, a trial court must order the State to elect the occurrence upon which it intends to rely for a conviction for each alleged offense. *Phillips v. State*, 193 S.W.3d 904, 909, 912 (Tex. Crim. App. 2006); *O'Neal v. State*, 746 S.W.2d 769, 772 (Tex. Crim. App. 1988); *Duffey v. State*, —S.W.3d —, No. 05-08-00260-CR, 2009 WL 2596109, at *2 (Tex. App. – Dallas August 25, 2009, no pet.) (not yet released for publication) ("The general rule is that when an indictment alleges just one sexual assault, but more than one assault is shown by the evidence at trial, the State must elect the act on which it will rely for conviction."). A trial court commits reversible error by failing to require the State to make its election at the close of its evidence, and because the jury must consider a multitude of incidents when no election is made, a defendant's right to a unanimous jury verdict as guaranteed by the Texas Constitution is jeopardized.[2] TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. arts. 36.29(a), 37.02, 37.03, 45.034-45.036; *Phillips*, 193 S.W.3d at 913; *but see Martinez*, 225 S.W.3d at 555. (election not necessary where parties had not offered evidence of multiple occurrences of conduct conforming to a single indictment allegation). Consequently, where such error occurs, we are required to reverse a defendant's convictions unless we find beyond a reasonable doubt that the error did not contribute to the convictions or had but slight effect. TEX. R. APP. P. 44.2(a); *Phillips*, 193 S.W.3d at 914.

*Application*

Initially, the State asserts any error is not preserved for our review, alleging Appellant's objection was too vague. But contrary to the State's assertion that Appellant's election request was so convoluted and nonsensical that he failed to preserve the matter for appellate purposes, we note

---

[2] In this context, "[u]nanimity . . . means that each and every juror agrees that the defendant committed the same, single, specific criminal act." *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005).

that Appellant clearly stated, "I would like the State to be required to elect at this point which incident is the incident they're going to rely upon." Therefore, we find Appellant's statement sufficient to convey Appellant's election request to both the trial court and the State and, similarly, to preserve this issue for appeal.

Turning to the merits, after careful review of the record, we note that C.F. specifically described a single act of anal penetration and, therefore, the election requirement does not apply to Count I. *Martinez*, 225 S.W.3d at 555. Thus, we turn to Count II. Here, because the election request was timely made after the close of the State's evidence and because the evidence showed three separate oral sexual assaults occurring at different times, the trial court was required to order the State to elect the acts upon which it would rely in support of its conviction under Count II. *Phillips*, 193 S.W.3d at 909, 912; *O'Neal*, 746 S.W.2d at 772; *Duffey,* 2009 WL 2596109, at *2. The trial court's failure to do so constituted error. *Phillips*, 193 S.W.3d at 909, 912.

We next consider whether, beyond a reasonable doubt, the error contributed to the conviction or had but a slight effect. TEX. R. APP. P. 44.2(a); *Phillips*, 193 S.W.3d at 914. Our review of the record shows that neither the closing arguments,  the court's charge to the jury, nor the application paragraphs limited the jury's consideration to a single act of oral sexual assault. Consequently, the jury had for its consideration three oral sexual assault offenses by which it could have considered the acts individually, collectively, or in mix-match fashion to find Appellant guilty.  Because the jury was left to consider a multitude of incidents, Appellant's right to a unanimous jury verdict as guaranteed by the Texas Constitution was offended. TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. arts. 36.29(a), 37.02, 37.03, 45.034-45.036; *Phillips*, 193 S.W.3d at 913; *but see Martinez*, 225 S.W.3d at 555.  Based upon these facts, we cannot find that the error did not contribute to Appellant's conviction as to Count II, or that it had but slight effect. TEX. R. APP. P.

44.2(a); *Phillips*, 193 S.W.3d at 914. The trial court's error as to Count II was harmful. We overrule Issue One as to Count I and sustain Issue One as to Count II.

## OUTCRY WITNESS

In his second issue, Appellant complains that the trial court erred when it determined that C.F.'s mother, Lourdes, was the proper outcry witness. An outcry witness is statutorily defined as the first person, eighteen years or older, other than the defendant, to whom a child or person with a disability against made a statement about the offense. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(2)(Vernon 2005).[3] The statement must, in some discernible manner, describe the alleged offense and "must be more than words which give a general allusion that something in the area of child abuse was going on." *Garcia v. State,* 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). A trial court has broad discretion in determining the proper outcry witness. *Garcia*, 792 S.W.2d at 92; *Sims v. State*, 12 S.W.3d 499, 500 (Tex. App. – Dallas 1999, pet. ref'd). Unless a clear abuse of discretion is established by the record, a trial court's determination should not be disturbed. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Garcia*, 792 S.W.2d at 92. We will not disturb a trial court's ruling on appeal if it is within the zone of reasonable disagreement. *Tear v. State*, 74 S.W.3d 555, 558 (Tex. App. –Dallas 2002, pet. ref'd), *citing Weatherred*, 15 S.W.3d at 542.

*Application*

After hearing Laura's testimony that Alicia had stated, "[H]e [has] to pay, he [has] to go to jail," had nodded when Laura asked if Alicia was referring to Appellant, and had died within the

---

[3] As Appellant was indicted, tried, and convicted prior to 2009, when amendments to article 38.072 became effective, we proceed under and cite to the former law in effect when the criminal proceedings commenced. The pre-2009 provisions within article 38.072 remain in effect for this purpose. Acts 2009, 81st Leg., R.S., ch. 284, § 40, 2009 Tex. Gen. Laws 744, 769. The provisions formerly found in article 38.072, § 2(a)(2) are now set forth in § 2(a)(3). *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3) (Vernon Supp. 2010).

following weeks, the trial court conducted an article 38.072 hearing outside the presence of the jury to designate the outcry witness. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(2)(Vernon 2005). During the hearing, C.F.'s mother, Lourdes, testified that her sister, Laura, had told her to ask her children if anything was wrong and whether anyone at Alicia's house been touching them. Lourdes spoke in detail with C.F. During their discussion, C.F. informed Lourdes that Alicia had seen something, but when Lourdes asked C.F. if Alicia had told anybody about what she had seen, C.F. answered, "No." Lourdes testified that although she understood that Alicia knew something about what had happened to C.F., she did not know exactly what Alicia knew, she did not know whether C.F. had any discussions with Alicia, and, as far as she knew, she was the first adult with whom C.F. had discussed the events that occurred.

The trial court admitted into evidence the notes of the forensic interview of C.F. and viewed the videotaped interview of C.F. The interview notes reflect that C.F. stated that his aunt had caught Appellant sexually assaulting C.F., made Appellant stop, told C.F. to call the police if it happened again, and that, on the following day, C.F. "told his aunt." In response to the question, "Who told your mom what was going on about [Appellant]?", C.F. answered, "My aunt," without specifying to which aunt C.F. was referring.

Appellant argued that because Alicia was the first person with whom C.F. had discussed "everything," she was the only person under article 38.072 whose testimony was permissible as an outcry witness. The State argued that, as Alicia had died, she could not serve as an outcry witness and brought to the court's attention that C.F. had not indicated the extent of his discussions with Alicia but had described the initial offense in great detail to his mother.

In making its ruling, the trial court stated:

> Let the record reflect, this may not be clear in black and white, that the Court

has had the opportunity in looking at the videotape to observe the demeanor and tenor and circumstances of the questioning of the child.

And under the totality of the circumstances, and the record before the Court, the Court finds that the first discernible statement is towards . . . Lourdes . . ., the mother of the child, and the State has met the threshold to offer her as an outcry witness.

Under these facts, while C.F. stated that he told Alicia "everything" that had happened, he did not state what "everything" was. There is also ample evidence that C.F. described to Lourdes the specific details of the assaults and actually demonstrated the commission of at least one offense for her. Accordingly, having reviewed the record, we find that the trial court's determination that C.F.'s first discernible statement was made to Lourdes is supported by the evidence and within the zone of reasonable disagreement. *Garcia,* 792 S.W.2d at 91; *Tear*, 74 S.W.3d at 558; *Weatherred*, 15 S.W.3d at 542; s*ee also Schuster v. State*, 852 S.W.2d 766, 768 (Tex. App. – Fort Worth 1993, pet. ref'd) (where child first told mother of offense, but child was too upset to provide details, psychologist was proper outcry witness). As the trial court did not abuse its discretion in determining the proper outcry witness, we will not disturb its decision on appeal. *Weatherred*, 15 S.W.3d at 542; *Garcia*, 792 S.W.2d at 92; *Sims*, 12 S.W.3d at 500. Issue Two is overruled.

## CONCLUSION

We affirm the trial court's judgment as to Count I. We reverse the trial court's judgment as to Count II and remand for further proceedings. Tex. Const. art. V, § 13; Tex. Code Crim. Proc. Ann. arts. 36.29(a), 37.02, 37.03, 45.034-45.036; *Phillips*, 193 S.W.3d at 913.

GUADALUPE RIVERA, Justice

November 10, 2010

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)