Affirmed and Opinion filed June 10, 2008








Affirmed
and Opinion filed June 10, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00077-CR

____________

 

JAMES BERNARD ISENHOWER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 239th
District Court

Brazoria County, Texas

Trial Court Cause No. 50,657

 



 

O P I N I O N

A jury convicted appellant James Isenhower of sexual
assault of a child and assessed punishment at twenty years= confinement and a
$10,000 fine.  On appeal, appellant contends the trial court erred by (1)
failing to inform the jury of the State=s election and (2)
admitting testimony in violation of Texas Rule of Evidence 403.  We affirm.

I.  FACTUAL AND PROCEDURAL BACKGROUND

During appellant=s sexual assault
trial, the complainant, A.B.,[1]
testified that when she was fourteen years[2]
old, she and her mother left the Ukraine and moved to Angleton, Texas, where
A.B.=s mother married
an American man whom she had previously met.  Due to her stepfather=s abuse of her
mother, A.B. and her mother left their home approximately one month later, and
A.B.=s mother filed for
divorce.

A.B. met appellant when she began working as a volunteer
with horses and children at a business owned by appellant=s wife in
Angleton.  At that time, appellant worked as a police officer in Danbury,
Texas.  A.B. testified that appellant and his wife had offered to help A.B. and
her mother if they ever needed it.  When A.B. and her mother fled their home,
appellant and his wife offered to help them seek assistance at a women=s center and file
a police report.  A.B. and her mother lived with appellant and his wife in
their trailer for the next couple of months.  Thereafter, A.B. and her mother
lived with the mother of one of appellant=s friends in exchange
for taking care of the woman.  After the woman passed away, A.B. and her mother
moved into an apartment in Danbury in June 2000.

Appellant subsequently attempted to kiss A.B. on two
occasions.  The first
incident occurred when appellant took A.B. four-wheeling.  When A.B. pushed
appellant away and told him Ano,@ he asked her, AWhat do you have against feeling
good?@  The second incident took place a
couple of days later at the Danbury police station.








One afternoon in late 2000, appellant visited A.B. at her
apartment to show her a new four-wheeler that he had recently bought.  A.B.
testified that he came over at approximately 3:00 or 4:00 p.m., and that she
was home alone because her mother was still at work.  Afterwards, appellant had
intercourse with her in the bedroom she shared with her mother.  She testified
that the sex occurred on the bed and that she was wearing her t-shirt but no
pants or underwear and that appellant was wearing a t-shirt and shorts.  She
further testified that a contraceptive foam was used prior to the intercourse
and that appellant told her that the contraception would prevent her from
becoming pregnant.  The intercourse lasted approximately five minutes.  A.B.
was fourteen years old at the time of the incident.

After this testimony, the trial court held an evidentiary
hearing, outside of the presence of the jury, with regard to the potential
admission of extraneous evidence that A.B. and appellant had intercourse on
numerous subsequent occasions, and that A.B. became pregnant and had an
abortion.  Appellant=s counsel objected to the admission of the
evidence as inflammatory and unfairly prejudicial.  Pursuant to Article 38.37
of the Code of Criminal Procedure,[3]
the court ruled that the evidence was admissible and instructed the jury that
it was to consider the evidence for the limited purpose of determining the
previous relationship between A.B. and appellant, if any, in connection with
the offense.








A.B. testified that approximately one or two weeks after
the first sexual encounter, appellant had intercourse with her again at her
apartment but, this time, without contraceptive protection.  After A.B. told
appellant that she might be pregnant, appellant bought two pregnancy tests for
A.B.  After the pregnancy was confirmed, appellant told A.B.=s mother, arranged
for an abortion, and accompanied A.B. and her mother to the clinic. 
Afterwards, appellant told A.B. not to contact the police because it would be
embarrassing for her and, as a police officer, he would not be treated well in
jail.  A.B. testified
that appellant had intercourse with her a total of approximately twenty-eight
times at various locations, including the Danbury apartment, the police
station, and outside of his patrol car in rural areas.

After A.B. finished the eighth grade, she and her mother
moved with appellant to Colorado.  Before A.B. testified about her relationship
with appellant in Colorado, the trial court instructed the jury that it was to
consider the extraneous evidence for the limited purpose of determining the
previous relationship between A.B. and appellant, if any, in connection with
the charged offense.  A.B. testified that although she told appellant that she
did not want to have sex with him, he had intercourse with her more than 120
times while they lived in Colorado.  During that time, appellant reminded A.B.
that he owned the house that they lived in, that he paid for everything, and
that she could be deported.  A.B. also testified that her mother and appellant
had had a relationship while they lived in Texas and Colorado.

A.B. and her mother lived with appellant in Colorado for
approximately four years.  In 2005, after his relationship with A.B.=s mother ended,
appellant ordered A.B. and her mother to move out of the house.  After A.B.
confided to her mother that appellant had been having intercourse with her, her
mother reported appellant to the police.  Appellant was subsequently arrested.

The court held another evidentiary hearing with respect to
the potential admission of extraneous evidence regarding appellant=s charged offense
in Colorado.  The court excluded appellant=s written
statement admitting to a sexual relationship with A.B. but ruled that testimony
regarding the statement was admissible for the limited purpose of determining
the previous and subsequent relationship between A.B. and appellant, if any, in
connection with the charged offense.  








Deborah Davidson, a Colorado probation officer, testified
that appellant had pleaded guilty to the offense of attempted sexual assault on
a child by one in a position of trust.  In exchange for his plea, the State
recommended probation.  In the course of preparing a pre-sentencing report,
Davidson interviewed appellant regarding his relationship with A.B.  Appellant
told Davidson that, although he knew it was illegal, he had had a consensual
sexual relationship with A.B.

Prior to the trial court=s limiting
instruction relating to the Colorado offense, defense counsel made a motion
requesting that the State be required to elect the act on which it sought to
convict appellant.  The court granted the motion after the State rested its
case-in-chief.  At the close of its evidence, the State elected to seek
conviction based upon the first act of sexual intercourse that occurred when 
A.B. was fourteen years old.  Neither attorney objected to the proposed jury
charge at the charge conference.

The jury found appellant guilty of sexual assault of a
child and assessed his punishment at twenty years= confinement and a
$10,000 fine.  Appellant timely filed this appeal.

                                                    II. 
ANALYSIS

A.  Election

In his first issue, appellant contends that the trial court
erred in failing to inform the jury of the State=s election and
that such failure constituted harmful error.  Specifically, he argues that
after the court required the State to elect the offense upon which it would
rely for conviction, and the State made its election, the court erred by
failing to communicate the election to the jury.  In his second issue,
appellant complains that the trial court=s failure to
instruct the jury as to which act constituted the primary offense deprived him
of his constitutional right to a unanimous verdict.  Because the two issues are
related, we consider them together.

1.  Error Analysis








The general rule is that where one act of intercourse is
alleged in the indictment and more than one act of intercourse is shown by the
evidence in a sexual assault trial, the State must elect the act upon which it
would rely for conviction.  See O=Neal v. State, 746 S.W.2d 769,
771 (Tex. Crim. App. 1988) (en banc).  Before the State rests, the trial court
has discretion to direct the State to make an election.  Phillips v. State,
193 S.W.3d 904, 909 (Tex. Crim. App. 2006) (citing O=Neal, 746 S.W.2d at
771).  However, once the State rests its case-in-chief, upon a timely request
by the defendant, the trial court must order the State to make an election and
failure to do so constitutes error.  See id.

Appellant does not contend that the State failed to make an
election.  Indeed, it is undisputed that, prior to the close of the State=s evidence,
appellant requested that the trial court require the State to elect the offense
upon which it intended to seek a conviction, and the court granted the
request.  After resting its case-in-chief, the State elected to rely on the
first incident of sexual intercourse that occurred when A.B. was fourteen years
old.[4] 
Rather, appellant argues that the trial court failed to inform the jury of the
State=s election, and
that such failure is Atantamount to denying Appellant=s request to
require the State to elect.@

When the State elects the act on which it will rely for
conviction, a defendant is entitled to an instruction charging the jury to
consider only the elected act in deciding guilt and limiting the jury=s consideration of
the other unelected acts to the purposes for which they were admitted.  Rivera
v. State, 233 S.W.3d 403, 406 (Tex. App.CWaco 2007, pet.
ref=d); Duran v.
State, No. 03-02-00253-CR, 2003 WL 124196, at *4 (Tex. App.CAustin Jan. 16,
2003, pet. ref=d) (mem. op.).  The court charged the jury, in
relevant part, as follows:








You are instructed that there is testimony before you in this case
regarding the defendant having committed an act other than the offense alleged
against him in the indictment in this case.  This is called an extraneous act.

You cannot consider testimony of extraneous acts for any purposes
unless you first find and believe beyond a reasonable doubt that the defendant
committed any such extraneous acts and even then, you may only consider the
same in determining the previous and subsequent relationship that existed
between the defendant and the child, A.B., if any, and for no other purpose. 

Now, bearing in mind the foregoing
instructions, if you believe from the evidence beyond a reasonable doubt, that
the defendant, on or about [th] 15th day of October 2000, in the County of
Brazoria, State of Texas, as alleged in the indictment, did then and there
intentionally or knowingly cause the sexual organ of [A.B.], a child younger
than seventeen (17) years of age and not the defendant=s spouse, to
contact the sexual organ of the defendant; then you will find the defendant
guilty of the offense of SEXUAL ASSAULT as alleged in the indictment.

Appellant argues that the charge did not inform the jury of
the State=s election because although it limited the jury to an
act occurring in Texas on or about October 15, 2000, A.B. testified to two
incidents of sexual intercourse that occurred in Texas in late 2000.  In
particular, A.B. testified about the first time appellant had intercourse with
her at her apartment when she was fourteen years old.  However, other than
testifying that the first incident occurred when she was fourteen years old and
Anot very long@ after she and her
mother had moved into their own apartment, there was no other evidence
presented to show when it occurred.  A.B. also testified that she and appellant
had intercourse a second time at the apartment Amaybe a week, two
weeks after@ the first incident.








The State argues that there was no error because the trial
court ordered the State to make an election and an election was made.  This
argument, however, misses the crux of appellant=s argument. 
Appellant does not dispute that an election took place; rather, he asserts that
the court=s failure to inform the jury of the State=s election in the
charge was the equivalent of denying him his request that the State elect.  The
State also argues that there was no error because defense counsel had ample
opportunity to object to the proposed charge or submit an alternative
instruction but failed to do so.  However, a party=s failure to
object to a proposed jury charge does not negate error, if any occurred. 
Instead, whether an error was objected to goes to determine the proper harm
analysis to be applied.  See Olivas v. State, 202 S.W.3d 137, 144 (Tex.
Crim. App. 2006) (noting reviewing courts use different standards for analyzing
jury charge errors depending upon whether defendant objected at trial).

We conclude that the limiting instruction contained in the
charge regarding extraneous evidence did not sufficiently clarify for the jury
which alleged incident the State was relying upon for conviction.  Based on the
evidence presented at trial, the jury could have believed that both the first
and the second incidents occurred Aon or about
October 15, 2000.@[5]  Moreover, the
jury charge also instructed the jury that the State was not bound by the exact
date alleged in the indictment.[6] 
See Farr v. State, 140 S.W.3d 895, 899B900 (Tex. App.CHouston [14th
Dist.] 2004) (rejecting State=s contention that jury charge limited jury=s consideration to
appellant=s conduct on specific date where charge instructed
jury it was not bound by specific date in indictment), aff=d sub nom. on
other grounds Phillips v. State, 193 S.W.3d 904 (Tex. Crim. App. 2006). 
Without a more specific instruction limiting the jury=s consideration to
the first incident of sexual intercourse, the court=s charge as
submitted did not instruct the jury to consider only the elected act in
deciding appellant=s guilt.  Accordingly, we next determine
whether such error was harmless.








2.  Harm Analysis

Appellant contends that the trial court=s failure to
inform the jury of the State=s election in the charge should be
analyzed under the constitutional error standard of review.  The State,
however, argues that because defense counsel failed to object to the charge or
submit any proposed alternative language, any error should be analyzed under
the egregious harm standard of review.

In support of his position, appellant relies on Dixon v.
State, 201 S.W.3d 731 (Tex. Crim. App. 2006), Phillips, 193 S.W.3d
at 913B14, and Fleck
v. State, 201 S.W.3d 268 (Tex. App.CHouston [14th
Dist.] 2006, no pet.).  In those cases, the defendants= requests that the
State elect the alleged offense upon which it intended to rely for a conviction
were denied.  Dixon, 201 S.W.3d at 732; Phillips, 193 S.W.3d at
907; Fleck, 201 S.W.3d at 270.  Concluding that such a denial amounted
to constitutional error, the courts then considered whether the error was
harmless.  Dixon, 201 S.W.3d at 733B36; Phillips,
193 S.W.3d at 913B14; Fleck, 201 S.W.3d 271B72.  Here, in
contrast, the trial court granted appellant=s request that the
State make an election, and the State elected the first incident of intercourse
between appellant and A.B.  Thus, to the extent appellant relies on Dixon,
Phillips, and Fleck to argue for application of a constitutional
error standard of review, we find these cases inapposite.








Because we have found that the trial court erred by failing
to include a more specific instruction in the charge limiting the jury=s consideration to
the first act of intercourse between A.B. and appellant, in light of appellant=s failure to object
to this charge error, we review it for egregious harm.  See Bluitt v. State,
137 S.W.3d 51, 53 (Tex. Crim. App. 2004) (where defendant failed to object to
jury charge error, court would not reverse in absence of evidence showing
egregious harm to defendant) (citing Almanza v. State, 686 S.W.2d 157
(Tex. Crim. App. 1985) (op. on reh=g)); Middleton
v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003) (finding degree of
harm from charge error requiring reversal depends on whether appellant
preserved error by objection); Riviera, 233 S.W.3d at 406 (where no
objection is made to charge error, egregious harm standard of review is
applied).  Errors that result in egregious harm are those that affect the very
basis of the case, deprive the
defendant of a valuable right, or vitally affect a defensive theory.  Hutch
v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).  In making an
egregious harm determination, reviewing courts assess the degree of harm in
light of (1) the entire jury charge, (2) the state of the evidence, including
the contested issues and weight of probative evidence, (3) the arguments of
counsel, and (4) any other relevant information revealed by the record as a
whole.  Ngo v. State, 175 S.W.3d 738, 750 n.48 (Tex. Crim. App. 2005)
(citing Almanza, 686 S.W.2d at 171); Ellison v. State, 86 S.W.3d
226, 228 (Tex. Crim. App. 2002).

Pursuant to Article 38.37, prior to the introduction of
evidence, the court gave an instruction to the jury regarding any incidents of
sexual intercourse other than the first incident.  Specifically, the court
instructed the jury that it should only consider the testimony regarding
extraneous acts for the limited purpose of determining the previous relationship
between appellant and A.B., if any, in connection with the charged offense. 
This instruction was given before A.B. testified about the second incident of
sexual intercourse, the resulting pregnancy and abortion, and the subsequent
acts of intercourse in Texas and Colorado.  An instruction was again given
before Davidson testified about appellant=s charged offense
in Colorado.  The only testimony that was not preceded by a limiting
instruction was A.B.=s testimony about the first time appellant
had sex with her.  Thus, with these limiting instructions, the jury was made
aware of which incident was the charged offense and which were extraneous acts.








With regard to the jury charge, the limiting instruction in
the charge mirrored the oral instructions given by the court throughout the
trial.  The charge instructed the jury that it had heard testimony regarding
acts committed by the defendant other than the offense alleged in the
indictment and that it could not consider such extraneous act testimony unless
it first found beyond a reasonable doubt that the defendant had committed the
acts.  It further instructed the jury that it could then only consider them in
determining the previous and subsequent relationship existing between appellant
and A.B., if any.

We next consider the arguments made by counsel.  In his
brief, appellant acknowledges that Athe prosecutor did
not argue alternative criminal acts in support of conviction.@  In fact, in
closing arguments, the State unequivocally informed the jury that Athere is one act
that has been alleged and it=s that first one at her apartment in
Danbury.@  Moreover, in his
closing arguments, defendant=s counsel emphasized that defendant was
only charged with one incident of sexual intercourse that occurred when A.B.
was fourteen years old.  He repeatedly referred to the extraneous sexual acts
as Ared herrings,@ specifically
identifying A.B.=s abortion, incidents of oral sex
occurring after the abortion, and the incidents of sexual intercourse and
conviction occurring in Colorado.

Finally, we note that all of the testimony regarding the
sexual incidents came from only one witness, A.B.  In that regard, the only
incident of intercourse about which she provided any specific detail with
regard to time, place, and circumstances was the first incident.[7] 
She testified that appellant had come to visit her one afternoon in late 2000,
at approximately 3:00 or 4:00 p.m., while she was home alone to show her his
new four-wheeler.  Appellant then had sex with her on her bed in the bedroom
that she shared with her mother.  She further testified about the clothing she
and appellant wore that day and that a contraceptive foam was used that
appellant told her would prevent her from becoming pregnant.  A.B. testified
that the intercourse lasted approximately five minutes and that she was
fourteen years old at the time of the incident.  A.B. did not describe any of
the other  incidents of intercourse with this degree of detail.  See O=Neal, 746 S.W.2d at
772 (finding it evident which act of intercourse State sought to convict upon
where complaining witness testified about one distinct, detailed incident).








In light of these considerations, it was clear that the
State was relying on the first incident of sexual intercourse to convict
appellant.  See O=Neal, 746 S.W.2d at
772B73 (finding that
State=s case-in-chief
evidence clearly indicated upon which act of intercourse State sought to
convict defendant and delayed election was harmless error).  As such, the trial
court=s error in failing
to give a more specific instruction in the jury charge was harmless.  Issues
one and two are overruled.

B.  Admission of Extraneous Offense Evidence 

In his third issue, appellant contends that the trial court
abused its discretion in admitting A.B.=s testimony
concerning an abortion because the evidence was only marginally relevant and
its probative value was significantly outweighed by its potential for unfair
prejudice in violation of Texas Rule of Evidence 403.  In his fourth issue, he
asserts that the trial court erred in admitting testimony regarding appellant=s admission of
guilt to Davidson related to the offense with which he was charged in Colorado
because it lacked probative value and was admitted in violation of Rule 403.

Rule 403 provides, in pertinent part, that relevant
evidence Amay be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice.@  Tex. R. Evid. 403.  Thus, Rule 403 recognizes that relevance alone
does not ensure admissibility.  Gigliobianco v. State, 210 S.W.3d 637,
640 (Tex. Crim. App. 2006).  Even when evidence is found to be relevant under
article 38.37, as it was here, when the defendant makes a Rule 403 objection,
the court has a non‑discretionary obligation to weigh the probative value
of the evidence against the unfair prejudice of its admission.  See Montgomery
v. State, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh=g) (en banc); Hinojosa
v. State, 995 S.W.2d 955, 957 (Tex. App.CHouston [14th
Dist.] 1999, no pet.).








Factors to be considered in this balancing process include:
(1) how compellingly the extraneous offense evidence serves to make a fact of
consequence more or less probable, (2) the potential the other offense evidence
has to impress the jury Ain some irrational but nevertheless
indelible way,@ (3) the time the proponent will need to develop the
evidence, during which the jury will be distracted from consideration of the
indicted offense, and (4) the force of the proponent=s need for this
evidence to prove a fact of consequence, i.e., whether the proponent has
other probative evidence available to him to help establish this fact, and
whether the fact related to an issue in dispute.  See Santellan v. State,
939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (en banc) (citing Montgomery,
810 S.W.2d at 389B90)).  In overruling such an objection,
the court is assumed to have applied a Rule 403 balancing test and determined
the evidence was admissible.  Hinajosa, 995 S.W.2d at 957.  Appellate
review on the admissibility of evidence is conducted under an abuse of
discretion standard.  Weatherred v. State, 15 S.W.3d 540, 542 (Tex.
Crim. App. 2000).  An appellate court is bound to uphold the trial court=s ruling regarding
the admissibility of evidence if it was within the zone of reasonable
disagreement.  Id.

1.  Abortion Evidence

Prior to voir dire, appellant filed a motion in limine
seeking to exclude from evidence any reference to an abortion or appellant=s involvement in
such a procedure.  The court granted the motion for purposes of voir dire and
later conducted a hearing outside the presence of the jury to consider its
admissibility at trial.  At the conclusion of the hearing, defense counsel
objected to the admission of the evidence under Rule 403, among other grounds,
arguing that the evidence was only marginally relevant and was significantly
outweighed by its inflammatory and prejudicial nature.  Following the hearing,
the court overruled defendant=s objections and found the evidence
regarding A.B.=s alleged abortion admissible under article 38.37,
subject to a limiting instruction.  After the jury returned, the court
instructed that it was only to consider the evidence for the limited purpose of
determining the previous  relationship between appellant and A.B., if any, in
connection with the charged offense.








A.B. testified that, during the time period when appellant
was having sex with her, she learned that she was pregnant after missing her period. 
After she told appellant, who was Aa little bit upset@ by the news, she
took two pregnancy tests that appellant had bought which  confirmed her
pregnancy.  A.B. testified that appellant took her to a clinic to have an
abortion and that she was fifteen years old at the time.  A.B. further
testified that appellant told her mother that A.B. was pregnant and was going
to have an abortion and that her mother went with them to the clinic. 
Appellant told A.B. not to call the police because it would be embarrassing for
her and he could not go to jail because, as a police officer, he would not be
treated well.  A.B. testified that appellant instructed her to throw away the
paperwork that she had received from the clinic so that there would Abe no trail@ and that her
mother threw it away.

Appellant argues that the trial court abused its discretion
in admitting A.B.=s testimony regarding her abortion because
it was inadmissible under the Rule 403 balancing test.  He first contends that
the probative value of the evidence was low because it corroborated an
extraneous offense, i.e., the second incident of intercourse, rather
than the first incident upon which the State sought to convict him.  However,
while it is true that the evidence bore directly on the second incident of
intercourse, this was not its only value.  The record reflects that A.B.=s delayed outcry
was a hotly contested issue.  Defense counsel questioned A.B. repeatedly as to
why she did not complain about appellant to anyone for Aa five or six-year
span.@  In his closing
arguments, defense counsel emphasized the delayed outcry to support the defense=s theory that A.B.
only reported appellant to the authorities after he ordered her and her mother
to leave the house in Colorado and stopped supporting them.  A.B. testified
that appellant bought the two pregnancy tests, he found a clinic to perform the
abortion, he told her not to call the police because it would be embarrassing
for her and he could not go to jail, and he instructed her to throw away the
paperwork from the clinic.  On cross-examination, defense counsel asked A.B.
the following:

Q:      [E]verybody just goes rolling off to the
abortion provider is your story, right?

A:      That=s what we were told to do.

Q:      You always do what you are told to do?

A:      Yes, sir.








Evidence of an extraneous offense is admissible to explain
why a victim of sexual assault did not make a prompt outcry.  See Brown v.
State, 657 S.W.2d 117, 119 (Tex. Crim. App. 1983) (holding that sexual
assault victim=s testimony that appellant threatened to kill her
family was admissible to show reason for delayed outcry); Wilson v. State,
90 S.W.3d 391, 394 (Tex. App.CDallas 2002, no pet.) (holding trial court
properly admitted complainant=s testimony about appellant=s assault of her
mother because it explained why complainant did not promptly report abuse); see
also Mark v. State, No. 14-01-01137-CR, 2003 WL 193070, at *5 (Tex. App.CHouston [14th Dist.]
Jan. 30, 2003, pet. ref=d) (not designated for publication)
(finding trial court did not abuse discretion in admitting mother=s testimony
regarding appellant=s violence where evidence demonstrated why
victim was afraid of appellant and failed to make prompt outcry).  Thus, A.B.=s testimony
regarding her abortion demonstrated the degree of control that appellant
exerted over A.B. and explained her delayed outcry.

Appellant next argues that the testimony regarding A.B.=s abortion was
unfairly prejudicial because of the extremely inflammatory nature of the
subject and its potential to impress the jury.  The State acknowledges that
abortion is an inflammatory subject but argues that Awhen the issue is
part and parcel of the charged offense its potential to impress the jury is
reduced.@  The State cites
to no authority to support its position, nor are we aware of any.    As to the
amount of time needed to develop the evidence, the record reflects that the
testimony regarding A.B.=s abortion, including direct, re-direct
and cross-examination,  took approximately seventeen pages versus ten pages of
testimony related to the charged offense.  With regard to the State=s need for the evidence,
A.B.=s testimony
regarding her abortion was perhaps the most probative evidence demonstrating
the degree of control that appellant exerted over A.B., which supported the
State=s explanation for
A.B.=s delayed outcry.

We conclude that even though the evidence was inflammatory
and took a relatively disproportionate amount of time to develop, the evidence
of A.B.=s abortion
admitted under article 38.37 was properly admitted under the Rule 403 balancing
test based on its probative value in explaining the parties= relationship and
A.B.=s delayed outcry.








2.  Davidson=s Testimony

Prior to trial, defense counsel filed a AMotion to Exclude
Defendant=s Statement@ seeking to
exclude defendant=s written statement made in connection
with his plea agreement for the offense committed in Colorado.  The trial court
imposed a motion in limine regarding the statement in order to conduct an
evidentiary hearing to determine its admissibility.  At trial, and outside of
the jury=s presence,
Davidson testified about her interview with appellant during which he told her
that he had had a sexual relationship with A.B.  At the conclusion of the
hearing, the State requested that Davidson=s testimony be
admitted under Rule 404(b) for the purpose of rebutting appellant=s defensive theory
that A.B. fabricated the allegations against appellant.  Defense counsel argued
that the testimony was inadmissible because its potential for unfair prejudice
substantially outweighed its probative value.  The court excluded appellant=s written
statement based on a lack of proper predicate but admitted Davidson=s testimony,
finding that its probative value outweighed its prejudicial effect.

Davidson testified that appellant had pleaded guilty to the
offense of attempted sexual assault on a child by one in a position of trust. 
In exchange for his plea, the State recommended probation. In the course of
preparing a pre-sentencing report, Davidson interviewed appellant regarding his
relationship with A.B.  Appellant admitted to Davidson that he had had a sexual
relationship with A.B. and that he knew it was illegal.  Davidson
testified that appellant told her that he had been living with A.B. and her
mother and that he and A.B. developed a relationship because they both felt
mistreated by A.B.=s mother.  Appellant told Davidson that
although he and A.B. had initially turned to one another for comfort and
friendship, their relationship became sexual and he fell in love with her.








Appellant contends that the trial court abused its
discretion in admitting Davidson=s testimony because
its probative value was substantially outweighed by its potential for unfair
prejudice in violation of Rule 403.  Specifically, he argues that the State did
not connect appellant=s admission to the charged offense and,
thus, it lacked probative value for the Texas offense.  Appellant asserts that
even if we find the evidence relevant, the trial court erred in admitting it
under Rule 403.

Our system of justice recognizes that a defendant should be
tried only for the charged offense and not for his criminal propensities, and
thus, evidence of extraneous offenses is normally inadmissible.  Moses v.
State, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).  However, Rule 404(b)
allows evidence of other crimes, wrongs, or acts if the evidence has relevance
apart from character conformity.  See Tex.
R. Evid. 404(b); Moses, 105 S.W.3d at 626.  Otherwise
inadmissible extraneous evidence may be admissible for other purposes including
proving motive, opportunity, intent, preparation, plan, knowledge, identity,
absence of mistake, or accident.  See Moses, 105 S.W.3d at 626; Bargas
v. State, No. 14-06-00795-CR, __ S.W.3d __, 2008 WL 2026424, at *6 (Tex.
App.CHouston [14th
Dist.] May 13, 2008, no pet. h.).

Rebuttal of a defensive theory is also one of the
permissible purposes for which relevant evidence may be admitted under Rule
404(b).  Moses, 105 S.W.3d at 626.  The Court of Criminal Appeals has
held that extraneous offense evidence is admissible under Rule 404(b) to rebut
a defensive theory raised in an opening statement or raised by the State=s witnesses during
cross-examination.  Ransom v. State, 920 S.W.2d 288, 301 (Tex. Crim.
App. 1996) (op. on reh=g); Bargas, 2008 WL 2026424, at
*6.  In sexual assault cases, extraneous offense evidence may be admitted under
Rule 404(b) to rebut defensive theories of retaliation or that the defendant is
an innocent victim of a Aframe-up.@  Wheeler v.
State, 67 S.W.3d 879, 887 n.22 (Tex. Crim. App. 2002) (involving defensive
theory of conspiracy or frame-up motivated by greed or money); Moses,
105 S.W.3d at 627 (involving a retaliation defensive theory); Dennis v.
State, 178 S.W.3d 172, 178 (Tex. App.CHouston [1st
Dist.] 2005, pet. ref=d) (involving frame-up defensive theory
motivated by anger or revenge).

In his opening statement, defense counsel stated:








Comes a point when Mr. Isenhower
says in effect, to Angela the mother, well, we are going to break it off.  Why
don=t you and [A.B.]
go your way and I will go mine and they break up in Colorado . . . . What we
have here, gentlemen, I think is a bitter, vindictive older woman who decided
that once her gravy train had dried up, that she was going to get some pay back
and this is the way she is trying to get the pay back.  The revenge on Mr.
Isenhower.  By making this charge that he had sex with the daughter.

Throughout
his cross-examination of A.B., defense counsel sought to establish the
defensive theory that A.B. and her mother told the police that appellant had
had sex with A.B. in retaliation for the fact that he no longer supported them
after appellant and A.B.=s mother ended their relationship.  The
record reflects that defense counsel repeatedly asked A.B. about the fact that
she did not complain about appellant to anyone until she reported him to the
authorities in Colorado.[8] 
In closing, defense counsel argued, AShe didn=t tell anybody. 
Didn=t tell her mother,
didn=t tell anyone, no
complaint.  Nothing . . . .  Include that same as oh, by the way, more than 5
years later.@

A trial court does not abuse its discretion in admitting
extraneous offense evidence to rebut a defensive theory of frame-up or
retaliation.  See Moses, 105 S.W.3d at 627; Wheeler, 67 S.W.3d at
887B88; Bargas,
2008 WL 2026424, at *8; Dennis, 178 S.W.3d at 178.  It is clear from his
opening statements and cross-examination of A.B. that defense counsel raised
the defensive theory of retaliation.  Under Moses and Wheeler,
the trial court did not abuse its discretion in determining that Davidson=s testimony was
relevant rebuttal evidence to show that A.B. was not motivated by retaliation
in making the sexual assault allegations against appellant.  See Moses,
105 S.W.3d 627; Wheeler, 67 S.W.3d at 887B88. 








However, as noted above, even if relevant evidence is
offered and admissible under Rule 404(b), a trial court should nevertheless
exclude it if its probative value is substantially outweighed by the danger of
unfair prejudice.  Tex. R. Evid. 403;
Moses, 105 S.W.3d at 626.  The trial court must conduct a Rule 403
balancing test to make this determination.  See Mozon v. State, 991 S.W.2d
841, 847 (Tex. Crim. App. 1999); Bargas, 2008 WL 2026424, at *8.

The first of the factorsCthe strength of
the evidence to make a fact of consequence more or less probableCweighs strongly in
favor of admissibility.  Davidson=s testimony was
probative to rebut the defensive theory that A.B. fabricated the allegations in
retaliation for the fact that appellant no longer supported her and her mother
after his relationship with her mother ended.  The admission of this evidence
makes it much less likely that A.B.=s allegations
concerning the charged offense were the result of a retaliatory motive.

As to the second and third factors, although the evidence
had the potential to impress the jury in an indelible way, any unfair prejudice
is not outweighed by the probative value of the evidence.  See Bargas,
2008 WL 2026424, at *9; Dennis, 178 S.W.3d at 181.  Further, our review
of the record indicates that Davidson=s testimony was
neither lengthy nor graphic.

Finally, the strength of the State=s need for the
evidence to prove a fact of consequence was significant.  A.B. did not tell
anyone about her allegations until approximately five years after the offense
at issue occurred.  There was no physical evidence and no corroborating
eyewitness testimony.  Because appellant strongly contested A.B.=s allegations on a
theory of retaliation, the State demonstrated its need to counter appellant=s defensive theory
with Davidson=s testimony.  Thus, this factor weights heavily in
favor of admissibility.

In balancing the above factors, the trial court=s decision to
admit Davidson=s testimony was within the zone of reasonable
disagreement.  As such, we hold that the trial court did not abuse its
discretion under Rule 403 in admitting the extraneous offense evidence.  We
overrule appellant=s fourth issue.








III.  CONCLUSION

Having overruled all of appellant=s issues, we
affirm the trial court=s judgment.

 

/s/      Leslie B. Yates

Justice

 

 

Judgment rendered and Opinion filed
June 10, 2008.

Panel consists of Justices Yates,
Guzman, and Lee.*

.Publish C Tex.
R. App. P. 47.2(b).

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

____________________________

* Senior Justice Norman R. Lee, sitting by assignment.









[1]  To protect the privacy of the complainant in this
case, we identify her by her initials.  See Tex. Fam. Code Ann. '
109.002(d) (Vernon 2002).





[2]  A.B. was twenty-one years old at the time of trial.





[3]  Section 2 of Article 38.37 provides as follows: 

 

Sec. 2. Notwithstanding Rules 404 and 405, Texas Rules
of Evidence, evidence of other crimes, wrongs, or acts committed by the
defendant against the child who is the victim of the alleged offense shall be
admitted for its bearing on relevant matters, including:

 

(1) the state of mind of the defendant and the child;
and

 

(2) the previous and subsequent relationship between
the defendant and the child.

 

Tex. Code Crim. Proc. Ann. art. 38.37 (Vernon Supp. 2007).





[4]  The prosecutor testified as follows:

 

MS. KUCERA:   Yes, sir.  The State would
make an election as to in [sic] sequence with [A.B.]=s  testimony she indicated that there was a time that
she was 14 that she was in her apartment located in Danbury.  And that the
defendant had come over with his four-wheeler to show her the four-wheeler and they ended up
having sexual intercourse in the shared bedroom of her and her mother, the only
bedroom in that apartment.  

 





[5]  Contrary to the State=s assertion that A[t]he Court charged the jury that the offense date was
October 15, 2000,@ the charge instructed the jury that the offense
occurred Aon or about October 15, 2000.@





[6]  The charge contained the following instruction:

 

You are further charged as the law in this case
alleging SEXUAL ASSAULT, that the State is not required to prove the exact date
alleged in the indictment but may prove the offense, if any, occurred within
ten (10) years of the filing of the indictment after the child=s eighteenth birthday.  In this case the indictment
was filed on January 12, 2006.

 





[7]  Appellant argues that a considerable amount of time
was spent on the evidence concerning the abortion.  However, this testimony
focused on the abortion itself, rather than the intercourse, and was
immediately preceded by a limiting instruction from the court.





[8]  The record reflects that during his
cross-examination of A.B., which is approximately thirty-six pages long,
defense counsel asked her whether she reported appellant to anyone
approximately twenty-seven times.