# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00501-CR

**Randy Ates, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT NO. D-1-DC-06-302099, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw our opinion of December 10, 2010, and substitute the following opinion in its place. Appellant's motion for rehearing is denied.

Randy Ates was convicted of one count of indecency with a child by contact and three counts of aggravated sexual assault of a child. *See* Tex. Penal Code Ann. §§ 21.11, 22.021(a)(1)(B) (West Supp. 2010). Punishment was assessed at twenty years' confinement for the indecency count and forty years' confinement for each assault count, all sentences to run concurrently. Ates appeals, arguing that (1) the evidence against him was legally and factually insufficient; (2) the jury charge did not properly specify on which of the many alleged incidents of abuse the State elected to seek conviction; (3) the jury charge contained erroneous definitions of "intentionally" and "knowingly" as those terms pertained to the sexual-assault offenses; (4) the trial court erred by allowing a detective to testify that during an interview she found Ates's victim to be "truthful"; and (5) the trial

court erred by allowing a child witness to testify to events he allegedly witnessed when he was approximately two years old. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.A., the alleged victim in this case, testified that Ates sexually assaulted her many times over a several-year period. The first assault, which the trial participants dubbed the "bathroom" incident, allegedly occurred when A.A. was approximately six years old. Ates was living in A.A.'s home at the time along with his girlfriend and the mother of his children, Debbie Duran (A.A.'s aunt). A.A. testified that one day while she and Ates were the only people at home, Ates came into the bathroom as A.A. was finishing using it. Ates allegedly told A.A. to sit back down on the toilet. He then allegedly took off her pants, took off his own pants, and proceeded to rub his penis on her vagina until he ejaculated. Afterwards he allegedly told A.A. to take a bath or shower.[1]

A second group of incidents, which the trial participants dubbed the "master bedroom" incidents, occurred when A.A. was approximately eight years old. A.A. was still living with Ates, Duran, and their children at the time, but in a different house from the one in which the bathroom incident allegedly occurred. A.A. testified that on occasions when Ates was the only adult at home with the children, he would frequently assign them "chores." A.A.'s "chore" was always to "clean" Ates's bedroom. While the other children did chores elsewhere in the house, Ates would allegedly carry A.A., kicking and screaming, to his bedroom, where he would lay her on the bed and

---

[1] At trial, A.A. could not remember whether Ates told her to take a bath or a shower. Ates later argued to the jury that this fact showed A.A.'s story was inconsistent.

2

undress her. He would then allegedly either perform oral sex on her or remove his own clothes, lay on top of her, and rub his penis on her vagina until he ejaculated. A.A. testified that such incidents occurred more than fifteen times. On one occasion, A.A. tried to resist by picking up a bedside phone and hitting Ates in the head with it. A.A. testified that Ates "punished" her by flipping her over and penetrating her anus with his penis.[2]

The third incident, which the trial participants dubbed the "van" incident, also occurred when A.A. was approximately eight years old. A.A. testified that Ates occasionally drove her and the other children to a neighborhood swimming pool. Ates would let the other children exit his van to play in the pool but would make A.A. stay in the van with him. A.A. testified that Ates would remove her clothes, remove his own clothes, lie on top of her, and rub his penis on her vagina until he ejaculated. She also testified that Ates would occasionally "barely" penetrate her vagina with his penis. On the occasion that was dubbed the "van" incident in the trial court, A.A. recalled that Ates used a strawberry-scented lubricant.

A.A. did not report Ates's abuse until she was approximately fifteen years old. Between the ages of 10 and 15, A.A. did not live with Ates; rather, she lived with her mother and her mother's boyfriend. Her mother's boyfriend sexually assaulted A.A. during that time, eventually resulting in her becoming pregnant. In the course of explaining the pregnancy to her family and boyfriend, A.A. revealed that she had been abused by Ates.

---

[2] Ates's indictment and the jury charge both contained two sexual-assault counts arising from bedroom incidents: one based on oral sex and one based on anal penetration.

3

A.A.'s family reported her abuse to the police, who began investigating. Detective Jissett Gaslin interviewed A.A. and then interviewed Ates. Eventually Detective Gaslin obtained a warrant for Ates's arrest. A grand jury indicted Ates for three counts of aggravated sexual assault of a child, three counts of indecency with a child by contact, and four counts of indecency with a child by exposure. Ates pleaded not guilty and went to trial.

At trial, A.A. testified to the abuse she suffered at Ates's hands. Ates's son, Xavier, also testified. Xavier had lived with Ates and A.A. during the period when Ates was allegedly abusing A.A. Xavier testified that once, at age two, he witnessed Ates touching A.A. while both were naked.[3] The incident allegedly occurred in Ates's bedroom. Xavier testified that during the incident a pornographic videotape was playing on a television in the room.

Xavier's sister, Sabrina, who also lived with Ates and A.A. during the period when Ates was allegedly abusing A.A., testified that she once heard A.A. scream "help" and "stop it" while A.A. was alone in a room with Ates. Sabrina testified that at the time she thought A.A. was screaming because she was being spanked.

Xavier and Sabrina's mother, Debbie Duran, testified that on one occasion when she was living with Ates, she entered a bedroom and saw Ates leaning over a bed in which A.A. was lying under the covers. Ates had his hand under the covers, and Duran testified that it "d[idn't] look right." Duran asked Ates what was going on, and he said that he was trying to recover a "sippy cup" that A.A. was hiding under the covers. Duran was suspicious and asked A.A. if Ates was telling the

_____

[3] The State did not ultimately elect to use this incident as a basis for seeking a conviction.

4

truth. A.A. initially replied that he was, though she testified that she eventually told Duran he was not. Duran, however, did not testify that A.A. eventually said Ates was lying.

Sally Martinez-Cortez was Ates's girlfriend at the time Ates was arrested. She testified that after the police interviewed Ates, he came to her house and "gutted" her dishwasher so that he could hide in it if the police came to arrest him.

Police officer David Nordstrom testified that when he went with a group of officers to arrest Ates at the house where Ates was staying, Ates climbed out the back window and attempted to flee.

At the jury-charge conference, the parties discussed the State's need to elect a single instance of abuse as the basis for each count in the charge. The court denoted the instances the State elected by inserting "bathroom," "master bedroom," and "van" in parentheses under each of the counts in the charge. Ates objected to this method of denoting the State's elections, arguing that the "bathroom" and "master bedroom" counts should specify the addresses of the houses in which they occurred[4] and the "van" count should specify that it occurred "in a parking lot at a public swimming pool." The court overruled this objection.

The jury charge ultimately contained seven counts. On the basis of the bathroom incident, the charge contained one count of aggravated sexual assault, one count of indecency with a child by contact, and one count of indecency with a child by exposure. On the basis of the master bedroom incidents, the charge contained one count of aggravated sexual assault involving oral sex, one count of aggravated sexual assault involving anal penetration, and one count of indecency with

---

[4] Recall that Ates and A.A. lived together in two different houses.

5

a child by contact.  Finally, on the basis of the van incident, the charge contained one count of indecency with a child by contact.  The charge instructed the jury that if it found Ates guilty on the assault counts arising from the bathroom and bedroom incidents, it should not go on to consider the indecency counts arising from those incidents.

The jury found Ates guilty on all three bathroom- and bedroom-related assault counts.  Accordingly, it did not reach the bathroom- and bedroom-related indecency counts.  The jury also found Ates guilty on the van-related indecency count.  Ates elected for the court to assess punishment.  The court imposed a forty-year sentence for each of the assault counts and a twenty-year sentence for the indecency count.  Ates appeals.

## STANDARD OF REVIEW

When an appellant challenges the sufficiency of the evidence supporting his conviction, we examine all of the evidence adduced at trial in the light most favorable to the verdict and ask whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Brooks v. State*, No. PD-0210-09, 2010 Tex. Crim. App. LEXIS 1240, at \*14 (Tex. Crim. App. Oct. 6, 2010).[5]

A claim of jury-charge error is reviewed using the procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  *Barrios v. State*, 283 S.W.3d 348,

---

[5] The court of criminal appeals recently did away with factual-sufficiency review on the basis that it was "barely distinguishable" from legal-sufficiency review.  *See Brooks v. State*, No. PD-0210-09, 2010 Tex. Crim. App. LEXIS 1240, at \*2 (Tex. Crim. App. Oct. 6, 2010).  Thus, in this opinion, we do not recite separate review standards for legal and factual sufficiency even though Ates makes arguments under both standards in his appellate brief.

350 (Tex. Crim. App. 2009). The first step is to determine whether there was error in the charge. *Id*. If there was error and appellant objected to the error at trial, reversal is required if the error "is calculated to injure the rights of the defendant," which means that there is "some harm." *Id*. If the error was not objected to, it must be "fundamental" to warrant reversal, which mean that it was so egregious and created such harm that the defendant did not have a fair and impartial trial. *Id*.

We review trial court rulings on the admissibility of evidence for abuse of discretion. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). We will uphold a trial court's determination on the admissibility of evidence if it is reasonably supported by the record and correct under any applicable legal theory. *Id*.

## DISCUSSION

Ates raises several issues on appeal. First, he argues that the evidence against him was legally and factually insufficient. Second, he argues that the jury charge did not properly specify the alleged incidents of abuse on which the State elected to seek conviction. Third, he argues that the jury charge contained erroneous definitions of "intentionally" and "knowingly" as those terms pertained to the sexual-assault offenses. Fourth, he argues that the trial court erred by allowing a detective to testify that during an interview she found A.A. to be "truthful." Fifth, he argues that the trial court erred by allowing Xavier to testify to events he allegedly witnessed when he was approximately two years old. We will address these arguments in turn.

### *Sufficiency of the Evidence*

Ates argues that the evidence adduced at trial was legally and factually insufficient to sustain his conviction. Because the court of criminal appeals recently did away with factual-

7

sufficiency review, *see Brooks*, Tex. Crim. App. LEXIS 1240, at *2, we will consider only whether the evidence was legally sufficient. *See id*. (holding that the "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt").

Ates argues that the evidence was insufficient for several reasons. First, he argues that there was no evidence he owned a van at the time the van incident allegedly occurred. Specifically, he notes that his certificate of title for the van was dated 2002, whereas the van incident allegedly occurred some time between 1996 and 2000. This apparent discrepancy does not establish that the jury was unreasonable in finding that Ates assaulted A.A. in the van; the jury could have concluded that Ates possessed the van before he held title to it, that A.A. was mistaken about when the van incident occurred, or that some other fact accounted for the discrepancy. The jury is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). That being the case, we cannot say the jury acted unreasonably in crediting A.A.'s testimony about the van incident and minimizing the significance of the fact that Ates may not have held title to the van when it occurred.

Second, Ates argues that much of the testimony against him was characterized by "objective unlikelihood." For example, he argues that the purported "logistics" of the bathroom incident were dubious.[6] We take this essentially to be an argument that A.A.'s testimony about the bathroom incident was not credible. Witness credibility is, however, the exclusive province of the

---

[6] Ates argues that he physically could not, as alleged, have stood in front of a six-year-old while she was seated on a toilet and rubbed his penis on her vagina.

8

jury, and we will not second-guess the jury's determinations. *See Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). Ates attacks A.A.'s credibility in other ways, saying that her testimony about the duration of the bathroom incident was dubious, that her testimony about who else was in the house during the bathroom incident was inconsistent, and that her testimony about the bedroom incident conflicted with Xavier's. He also highlights the many-year delay between when A.A. was allegedly abused and when she reported her abuse. Again, we cannot second-guess the jury's determination that A.A. was credible. *Clayton*, 235 S.W.3d at 778.

Finally, Ates argues that A.A.'s testimony was not corroborated because both the "sippy cup" incident observed by Duran and the screaming heard by Sabrina were "objectively non-suspicious." A.A.'s testimony, however, did not require corroboration. *See* Tex. Crim. Proc. Code Ann. art. 38.07(a), (b)(1) (West 2005).

In sum, Ates does not demonstrate that the evidence was insufficient to support his conviction. We overrule Ates's first issue.

### State's Election and the Jury Charge

Ates argues that the jury charge did not properly specify the alleged incidents of abuse on which the State elected to seek conviction. At the jury-charge conference, the parties discussed the State's need to elect a specific instance of abuse as the basis for each count in the charge. The court ultimately denoted the instances the State elected by inserting "bathroom," "master bedroom," or "van" in parentheses under each count in the jury charge. Ates objected to this method of denoting the State's elections, arguing that the "bathroom" and "master bedroom" counts should specify the addresses of the houses in which they occurred and the "van" count should specify that

9

it occurred "in a parking lot at a public swimming pool." The court overruled this objection. Ates argues that doing so was error because the lack of geographical specificity meant the jury might not limit its deliberation on each count to a specific incident. *See Phillips v. State*, 193 S.W.3d 904, 910 (Tex. Crim. App. 2006) (one purpose of election is to ensure jurors unanimously agree one specific incident occurred constituting charged offense).

We disagree. The jury charge clearly listed a specific location ("bedroom," "master bedroom," or "van") in bold font under each count in the jury charge. These locations were not vague, confusing, or otherwise unspecific. We presume that the jury heeded them and limited its deliberations accordingly. *See Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003) (appellate courts presume jury follows instructions).

Ates also argues that the jury charge should not have simply listed a location under each count, but rather should have included a location as an element of each charged offense. He complains that the failure to include a location as an *element* of each offense led to the possibility of a non-unanimous verdict.[7] He argues, in other words, that location needed to be included as an element of each offense to insure jury unanimity. Location is not, however, a material element of the offenses at issue. *See* Tex. Penal Code §§ 21.11, 22.021(a)(1)(B). Ates does not argue that the

_____

[7] We note that because Ates first urged his election request at the jury-charge stage, there was no issue concerning whether the method of election gave him sufficient notice. *See Phillips v. State*, 193 S.W.3d 904, 910 (Tex. Crim. App. 2006) (one purpose of election is to "give the defendant notice of the particular offense the State intends to rely upon for prosecution and afford the defendant an opportunity to defend"). That is to say, Ates's election request came too late to serve the purpose of ensuring that he had notice. *See id*. at 912 (to preserve right to notice, defendant must make election request at close of State's case-in-chief). Thus, jury unanimity is the only election-related concern we address.

10

jury charge left out any material elements of the charged offenses; rather, he argues that the jury charge should have included *additional* elements in the form of locations and addresses.

"Unanimity" simply means that "each and every juror agrees that the defendant committed the same, single, specific criminal act." *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). The trial court chose to address Ates's unanimity concern by indicating the State's election through a header under each count in the charge. An "election" generally requires "*some action* that excludes or limits the jury's consideration of an offense," such as a limiting instruction. *Ex parte Goodbread*, 967 S.W.2d 859, 861 n.2 (Tex. Crim. App. 1998) (emphasis added). The court's chosen method of indicating the State's election, along with an instruction that the jury had to reach a unanimous verdict to find Ates guilty on any individual count, served to ensure that the jurors agreed on a single specific act upon which they returned a verdict. We overrule Ates's second issue.

### The Jury Charge's Definitions of "Intentionally" and "Knowingly"

Ates argues that the jury charge erroneously defined the terms "intentionally" and "knowingly" as they pertained to the sexual-assault counts. The State concedes that the charge erroneously defined "knowingly" but argues that this error is not grounds for reversal because (1) Ates did not raise it at trial and (2) it did not cause egregious harm. *See Barrios*, 283 S.W.3d at 350 (jury-charge error not raised at trial is not grounds for reversal unless it was fundamental and caused egregious harm).

The jury charge defined "intentionally" and "knowingly" as follows: "A person acts intentionally, or with intent, when it is his conscious objective or desire to engage in the conduct.

11

A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." Sexual assault is a "conduct" offense. *See Gonzales v. State*, 304 S.W.3d 838, 847 (Tex. Crim. App. 2010). Thus, while the jury charge's definition of "intentionally" was adequate, the charge should have defined "knowingly" in terms of conduct. *See* Tex. Penal Code Ann. § 6.03(b) (West 2003) ("A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist."). Its failure to do so was error. *See Saldivar v. State*, 783 S.W.2d 265, 268 (Tex. App.—Corpus Christi 1989, no pet.). But because Ates did not object at trial, we can reverse only if the erroneous definition represented fundamental error and caused Ates egregious harm. *Barrios*, 283 S.W.3d at 350.

We hold that it did not. While knowledge was an element of the State's proof, Ates did not contest it at trial. Thus, he cannot have been harmed by the erroneous definition in the jury charge. *See Saldivar*, 783 S.W.2d at 268 ("[W]here no defense is presented which would directly affect an assessment of mental culpability, there is no harm in submitting erroneous definitions of 'intentionally' and 'knowingly.'"); *see also Jones v. State*, 229 S.W.3d 489, 494 (Tex. App.—Texarkana 2007, no pet.) ("[T]he intent of Jones in touching B.S.S., while it was a part of the State's required proof, was not a contested issue and consequently Jones could not be egregiously harmed by the definition of the intentional and knowing state of mind."). We overrule Ates's third issue.

### *Detective Gaslin's Testimony*

Ates argues the trial court erred by admitting Detective Gaslin's testimony that during a pre-trial interview she found A.A. to be truthful. Ates objected to this testimony as calling for "speculation," and the court overruled his objection. On appeal, Ates argues that Gaslin's testimony was objectionable for different reasons, including that it constituted improper bolstering and usurped the jury's prerogative to determine credibility. Because Ates did not raise any of his appellate arguments at trial, it appears that he has preserved nothing for our review. *See* Tex. R. App. P. 33.1(a); *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (legal basis of complaint raised on appeal cannot vary from that raised at trial); *Penry v. State*, 903 S.W.2d 715, 763 (Tex. Crim. App. 1995). Nevertheless, for the sake of completeness, we will entertain the arguments he has raised at trial and on appeal.

During trial, the following exchange occurred:

PROSECUTOR: During the time that you interviewed her, did you find [A.A.] to be truthful?

GASLIN: Yes, I did.

DEFENSE COUNSEL: Objection, Your Honor. I think this calls for speculation and it's outside of her personal knowledge. Ask that the answer be stricken from the record and the jury instructed.

PROSECUTOR: Actually it is within her personal knowledge. I'm asking her what her opinion of the victim's truthfulness was as she was interviewing her.

DEFENSE COUNSEL: Calls for an opinion. They're calling for speculation.

THE COURT: Overruled.

PROSECUTOR: Did you find [A.A.] to be truthful during that interview?

GASLIN: Yes, ma'am.

Ates's objection of "speculation" is without merit; Gaslin testified that she found A.A. truthful during her interview, not that A.A. *was* objectively truthful. In other words, Gaslin expressed her personal opinion of A.A.'s truthfulness. Doing so obviously did not require her to speculate about matters beyond her personal knowledge.

For the sake of argument, we will treat Ates's objection not as being about "speculation" per se but rather about Gaslin commenting on another witness's truthfulness. To the extent that Ates's objection can be construed that way, it had merit; it is indeed improper for one witness to comment on another witness's truthfulness. *See Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993). Thus, viewed in that light, we will consider whether the admission of Gaslin's testimony warrants reversal.

The improper admission of "truthfulness" testimony is non-constitutional error. *See Wilson v. State*, 90 S.W.3d 391, 393 (Tex. App.—Dallas 2002, no pet.). Thus, we will not overturn Ates's criminal conviction on the basis of Gaslin's testimony if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or influenced the jury only slightly. *Schutz v. State*, 63 S.W.3d 442, 443 (Tex. Crim. App. 2001). This means that we consider everything in the record, including testimony and physical evidence, the nature of the evidence supporting the verdict, and the character of the error and its relationship to other evidence. *Id*.

Having reviewed the record as a whole, we conclude that Gaslin's testimony does not warrant reversal. A.A., who was 19 at the time of trial, testified extensively and was cross-examined extensively. This means that the jury had ample opportunity to form its own opinion of A.A.'s

14

credibility before Gaslin took the stand. It therefore seems highly unlikely that Gaslin's objectionable testimony—which was exceedingly brief, consisting of a three-word answer to a single question—significantly impacted the jury's opinion of A.A.'s credibility. Indeed, Gaslin's testimony merely stated the obvious; given that Gaslin took A.A.'s interview to be a basis for investigating Ates, any rational jury would have inferred that Gaslin found A.A. truthful during the interview. Furthermore, in responding to Ates's "speculation" objection, the prosecutor stated in front of the jury that she was asking Gaslin only "what *her opinion* of the victim's truthfulness was *as she was interviewing her*" (emphasis added); the prosecutor highlighted, in other words, that she was not asking Gaslin to comment on A.A.'s objective truthfulness or the truthfulness of A.A.'s trial testimony. This fact makes it even less likely that Gaslin's testimony affected the jury's opinion of A.A.'s credibility as a trial witness. For all these reasons, we hold that even if Ates preserved error regarding the admission of Gaslin's testimony, that error was not sufficiently harmful to warrant reversal. We overrule Ates's fourth issue.

### *Xavier's Testimony*

Finally, Ates argues that the trial court erred by allowing Xavier to testify to events he allegedly witnessed when he was approximately two years old (Xavier was 12 at the time of trial). Ates argues that because Xavier was so young when he allegedly witnessed the events, he was not competent to testify about them later. *See Watson v. State*, 596 S.W.2d 867, 870 (Tex. Crim. App. 1980) (in determining competency of witness, court must assess whether witness had capacity to observe intelligently at time of events in question). Ates did not object to Xavier's testimony on this

15

basis at trial, however, so, as he acknowledges, it will not serve as grounds for reversal unless it constitutes fundamental error. *See* Tex. R. Evid. 103(d).

We hold that admitting Xavier's testimony was not fundamental error. Children are competent to testify unless, "after being examined by the court, [they] appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated." *Id*. R. 601(a)(2). There is no minimum age at which a child can be a competent witness. *Upton v. State*, 894 S.W.2d 426, 429 (Tex. App.—Amarillo 1995, writ ref'd); *Berotte v. State*, 992 S.W.2d 13, 17-18 (Tex. App.—Houston [1st Dist.] 1997, no writ). Having reviewed Xavier's testimony, it is clear that the trial court did not abuse its discretion by treating Xavier as competent. After taking the oath and explaining what it meant, Xavier successfully answered a series of questions about his age, his schooling, his interests, and Ates's identity. He then successfully answered a series of questions about the sexual assault he witnessed. He coherently described what he had seen and used dolls to demonstrate it to the jury. He also underwent a cross-examination, and the answers he gave were consistent. Nothing in the record suggests, much less establishes, that Xavier was unable to intelligently observe, process, or recall the abuse he witnessed at age two.

Admitting Xavier's testimony was not fundamental error for a second reason: the testimony was not essential to Ates's conviction. *See Almanza v. State*, 686 S.W.2d at 171-72 (error is fundamental only if so egregious and harmful that it deprives defendant of right to fair trial). A.A.'s testimony was in and of itself sufficient to support a conviction. Ates claims that Xavier provided critical corroboration of A.A.'s testimony, but A.A.'s testimony required no corroboration. *See* Tex. Crim. Proc. Code art. 38.07(a), (b)(1). Furthermore, the State did not ultimately elect to

16

seek a conviction on the basis of the episode that Xavier witnessed and testified about. Thus, we conclude that admitting Xavier's testimony was not fundamental error. We overrule Ates's fifth issue.

## CONCLUSION

For the reasons stated above, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed on Motion for Rehearing

Filed:   February 4, 2011

Do Not Publish